[No. 4911.]

## BUTLER, ADMINISTRATOR, v. PHILLIPS.

**1. Offices and Officers—Acts of a De Facto Public Officer.**

The acts of a de facto public officer are valid so far as they concern the public or third persons who have an interest in the things done, and such acts cannot be collaterally attacked. —P. 382.

**2. Same—Acting Under Unconstitutional Statute.**

The acts of a person holding a legally existing office, although the statute under the provisions of which he was elected or appointed be unconstitutional, are the acts of a de facto officer, and as such are upheld by the courts.—P. 383.

**3. City and County of Denver—County Judge—De Facto Judge.**

Section 22, article 6, Colo. const., as amended (Sess. Laws '01, p. 111), provides for the election in each county of a judge of the county court, and § 23 enacts that such courts shall be courts of record and shall have jurisdiction as therein provided. The charter of the city and county of Denver, adopted March 29, 1904, provided for two judges and changed the time of election, which provisions were held to be unconstitutional. Held, that, although such provisions were unconstitutional, a county judge elected and discharging the duties of such office thereunder was discharging the duties of a legally existing office by virtue of an election under a charter provision declared invalid by this court, and that all of his acts in the discharge of the duties of such office must be upheld as the acts of a de facto officer.—P. 387.

**4. Estates of Decedents—Witnesses—Competency—Wife Testifying for Husband.**

Mills' Ann. Stats., § 4822, provides that all persons, with certain exceptions, may be witnesses, and that neither parties nor other persons who have an interest in the event of an action or proceeding shall be excluded; and § 4816 provides that no.

party to any civil action, or person directly interested in the event thereof, shall be allowed to testify therein when any adverse party sues or defends as the administrator of any deceased person. Held, that in a proceeding upon the allowance of a claim against the estate of a decedent, the wife of the claimant is a competent witness to testify in favor of her husband.—P. 389.

5. **Estates of Decedents—Evidence — Deposition — Self-Serving Statement.**

In a proceeding upon the allowance of a claim against the estate of a decedent, a deposition taken by the administrator was introduced and read by claimant. Attached to the deposition as an exhibit was a letter written by the claimant to the deponent after the death of the decedent, in which was set forth in detail the amount and character of the services rendered upon which the claim against the estate was based, and such letter was allowed in evidence over the objection of the administrator. Held, that the claimant being disqualified as a witness under Mills' Ann. Stats., § 4816, no self-serving statement made by him in the form of a letter could be competent evidence. —P. 392.

6. **Practice in Civil Actions—Evidence—Hypothetical Questions.**

It is error to allow an answer to a hypothetical question which does not conform to the facts in the evidence, or which is based upon suppositions of which there is no evidence, tendency of evidence, nor any offer of evidence.—P. 393.

*Error to the County Court of the City and County of Denver.*

*Hon. Henry V. Johnson, Judge.*

Proceedings in the administration of the estate of John C. Butler, deceased, in which a claim in favor of William M. Phillips was allowed against the estate. From the order allowing such claim, George W. Butler, as administrator, brings error.

Decision *en banc.*                         *Affirmed.*

Mr. CHARLES D. HAYT and Mr. FRED R. WRIGHT, for plaintiff in error.

Mr. H. L. RITTER and Mr. LEWIS B. FRANCE, for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is a writ of error to an order of the county court of the city and county of Denver, Hon. Henry V. Johnson, judge presiding, allowing a claim against the estate of a decedent.

Plaintiff in error attacks the jurisdiction of the county court of the city and county of Denver and the right of Hon. Henry V. Johnson, who presided in the county court at the trial of this case, to sit as a judge of said court.

The question thus presented is important, as upon its determination depends the validity of a vast number of orders, judgments and decrees made and entered by Judge Johnson during his incumbency of the office of county judge of the city and county of Denver for a period of more than one year.

In *People ex rel., etc., v. Johnson,* 34 Colo. 143, it was held, that the respondent therein, Johnson, was unlawfully holding and exercising the office of county judge of the city and county of Denver, and a writ of ouster issued against said respondent.

It is contended, however, by defendant in error, that the order here under review, having been made by a *de facto* judge, should not be disturbed if otherwise found correct.

In *State v. Carroll,* 38 Conn. 449, Chief Justice Butler, after an exhaustive examination of the English and American cases on the subject, defines an officer *de facto* in a case wherein the facts were: M., a justice of the peace, had been requested by the clerk of the city court to act as judge of the police court during the absence of the regular judge. This request was made in accordance with a statute providing that, in case of the sickness or absence of a judge of a city court, a justice of the peace should be called in by the clerk to hold a court. M. accordingly

held the court, and a person convicted before him appealed on the ground that M. was not lawfully the judge of the court. It was urged that the statute above referred to was unconstitutional. The supreme court held that the circumstances under which M. acted constituted him an officer *de facto,* and declined to pass upon the unconstitutionality of the act, considering it unnecessary for the purposes of the case. Chief Justice Butler's definition of an officer *de facto* has been generally recognized and accepted by the courts of this country as being correct and full. It is:

"An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised: First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such inelegibility, want of power, or defect being unknown to the public; Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law. before the same is adjudged to be such."

In *People v. Johnson, supra,* this court held that the provisions of the charter of the city and county of Denver, adopted March 29, 1904, increasing the num-

ber of the judges of the county court to two, and changing the time of election of said judges to May 17, 1904, under which provisions and an election held pursuant thereto the judge presiding in the court below was discharging the functions of a judge of the county court, were unconstitutional.

As to the validity of the acts of a *de facto* public officer, the rule, supported by a practically unanimous current of authority, is, that such acts are valid so far as they concern the public or third persons who have an interest in the things done, and that such acts cannot be collaterally attacked.—8 Am. & Eng. Enc. Law (2nd ed.) 815.

This rule is recognized in *Darrow v. People,* 8 Colo. 417. The reason for the rule is thus stated in *Plymouth v. Painter,* 17 Conn. 585:

"The principle established  *  *  *  in regard to the proceedings of officers *de facto,* acting under color of title, is one founded in policy and convenience; is most salutary in its operation; and is, indeed, necessary for the protection of the rights of individuals, and the security of the public peace. The rights of no person claiming a title or interest under or through the proceedings of officers having an apparent authority to act, would be safe, if he were obliged to examine the legality of the title of such officer up to its original source, and the title or interest of such person were held to be invalidated by some accidental defect or flaw in the appointment, election or qualifications of such officer, or in the rights of those from whom his appointment or election emanated; nor could the supremacy of the laws be maintained, or their execution enforced, if the acts of officers having a colorable, but not a legal title, were to be deemed invalid."

And, in *Norton v. Shelby County,* 118 U. S. 425, 441, Mr. Justice Field, writing the opinion, says:

"The doctrine which gives validity to acts of officers *de facto,* whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Officers are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions. For the good order and peace of society, their authority is to be respected and obeyed until, in some regular mode prescribed by law, their title is investigated and determined. It is manifest that endless confusion would result if, in every proceeding before such officers, their title could be called in question."

It is apparent that the case here under consideration falls within the fourth subdivision of the definition given by Chief Justice Butler, *supra:*

"Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such."

That the acts of a person holding a legally existing office, although the statute under the provisions of which he was elected or appointed be unconstitutional, are the acts of a *de facto* officer, and as such are upheld by the courts, is established by the authorities.

In *Campbell v. Commonwealth,* 96 Pa. St. 344, two associate judges, unlearned in the law, sat with the president judge in Fayette county and participated in the trial and sentence of certain persons for arson. It was admitted that these associate judges acted under and by virtue of an election by the people of the county regularly commissioned by the governor, but the validity of their title to office was questioned on the ground that, under the constitution

of 1874 and subsequent legislation, the people had no power to elect associate judges in Fayette county. The court, in affirming the judgment of the court below, through Mr. Justice Mercur, said:

"Under due forms of law they (the associate judges) hold their offices by title regular on its face; and they are performing the duties thereby imposed on them, and enjoying the profits and emoluments thereof. Thus they are judges *de facto,* and as against all parties but the commonwealth, they are judges *de jure.* Having at least colorable title to these offices, their right thereto cannot be questioned in any other form than by *quo warranto,* at the suit of the commonwealth.—*Clark v. Commonwealth,* 5 Casey 129. They are entitled to notice and an opportunity to be heard in defense of their rights before they shall be adjudged to be invalid. As their title, then, cannot be impeached in this collateral action, it is unnecessary to consider any question relating to their right as against the commonwealth."

*In re Ah Lee,* 6 Sawyer 410, was a petition for a writ of *habeas corpus* wherein the petitioner alleged that he had been convicted of the crime of murder and sentenced to capital punishment by the circuit court of the county of Multnomah, Oregon, which judgment and sentence was affirmed by the supreme court; that neither the person who acted as judge of the circuit court nor those who acted as judges of the supreme court were holding their respective offices by appointment or election as judges of said courts in pursuance of any law or authority of the state of Oregon. The constitution of Oregon provided that, when the population of the state reached 200,000, the legislature should district the state into designated circuits, and provided for the election of judges to the circuit courts therein. The legislature passed the act before the state attained the requisite popu-

lation, and before election the governor, without authority, appointed the judges whose acts were under review.   The court held, at page 418:

"The persons appointed as judges under this act, although its unconstitutionality be admitted, and that therefore they are not judges *de jure,* or of right, are, nevertheless, acting as judges of constitutionally created and existing courts, having jurisdiction to try, hear, and determine the criminal action in which the petitioner has been convicted of murder and sentenced to receive the punishment of death when and as it took place, both in the court below and upon appeal.

"A person actually in office by color of right or title—not a mere usurper or intruder—although not legally appointed or elected thereto, or qualified to hold the same, is still an officer *de facto,* or in fact, and, as a matter of public convenience and utility, his acts while so in office are held valid and binding as to third persons."

In *Ex parte Strang,* 21 Ohio St. 610, the case was this:  A statute authorized the mayor of Cincinnati, in the absence or disability of the police judge, to appoint a temporary substitute.   In pursuance of this authority, the mayor appointed a substitute who, in the discharge of the duties of the office, committed Strang to prison for the non-payment of a fine.   The prisoner sued out a *habeas corpus,* and, on the argument, it was claimed in his behalf that the statute was contrary to the constitution and void.   The court held that, admitting the act to be void, yet the appointee of the mayor was a judge *de facto,* saying:

"The direct question in this case is, whether the reputed or colorable authority required to constitute an officer *de facto* can be derived from an unconstitutional statute.   The claim that it cannot seems to be based on the idea that such authority can only ema-

nate from a person or body legally competent to invest the officer with a good title to the office. We do not understand the principle to be so limited. We find no authorities maintaining such limitation, while we find a number holding the contrary. The true doctrine seems to be, that it is sufficient if the officer holds the office under some power having color of authority to appoint; and that a statute, though it should be found repugnant to the constitution, will give such color."

In support of this conclusion, the court cites *Taylor v. Skrine,* 3 Brev. 516; *Brown v. O'Connell,* 36 Conn. 432; *The State ex rel. v. Messmore,* 14 Wis. 164; *The State v. Bloom,* 17 Wis. 521; in all of which it appears that an unconstitutional statute was held sufficient to give color of right or authority to an appointment to a judicial office, and the acts of such appointees while in office thereunder were held valid.

In *Curtin v. Barton,* 139 N. Y. 505, the question under consideration was the validity of the act of the legislature establishing the "Municipal Court of the City of Syracuse." The court said (page 511):

"Whatever may be said with respect to the power of the legislature to provide for the appointment of the judges, nothing can be urged against its power to establish the court. Nor can it be doubted that the statute in question does in fact establish such court if the objections which are based upon other provisions of the constitution, hereafter noticed, were good. The judges were, in fact, appointed by the governor, were in possession of the office engaged in discharging the duties under color of such appointment. They were, therefore, officers *de facto,* discharging judicial duties under color of legal title, and such title can be questioned only by the state under whose authority they were invested with the character, at least, of *de facto* officers. This prin-

ciple is founded on considerations of public policy, and its maintenance is essential to the preservation of order, the security of private rights and the due enforcement of the laws. Moreover, it is sanctioned by abundant authority (citing cases)."

. In *Commonwealth v. McCombs,* 56 Pa. St. 436, it is said:

"An act of assembly, even if it be unconstitutional, is sufficient to give color of title, and an officer acting under it is an officer *de facto.* When a person is acting under the apparent authority of an act of assembly, his title to the office is not to be assailed collaterally."

See, also: *Carland v. Comrs. Custer Co.,* 5 Mont. 579; *Cole v. Village of Black River Falls,* 57 Wis. 110; *State v. Carroll,* 38 Conn. 449.

Diligent search has failed to disclose an authority which holds contrary to the doctrine announced in the above cases. The question remains, was the Hon. Henry V. Johnson, at the time he presided in the county court of the city and county of Denver, in the trial of this case, assuming to discharge the duties of a legally existing office?

Section 22, article 6, Colorado constitution, as amended (Session Laws 1901, 111), provides for the election in each organized county of a county judge, who shall be judge of the county court. Section 23 enacts that such courts shall be courts of record, and shall have jurisdiction as therein provided.

The charter convention which adopted and submitted to the people the charter, adopted March 29, 1904, deeming it to be necessary for the proper and speedy transaction of business in the county court of the city and county of Denver, and believing that it was within its power to increase the number of judges of the county court of such city and county, passed the provisions of the charter increasing the

number of judges to two, and changing the time of election of the judges of said court, which provisions this court held to be unconstitutional.—*People, etc., v. Johnson, supra.*

The charter did not create or attempt to create the office of judge of the county court, such office being a constitutional office, created and existing by virtue of the sections of the constitution above referred to. The charter simply attempted to provide for an increase of the number of persons who should exercise the functions and discharge the duties of such office. The court had a legal existence prior to, and at the time the Hon. Henry V. Johnson assumed to discharge the duties of the office of county judge, and was not created or attempted to be created by the charter under which he claimed an election to such office. This being true, it follows that Judge Johnson was discharging the duties of a legally existing office at the time he presided in the court below in the trial of this case, and during all of the time from his qualification and entry on the discharge of the duties of such office, up to and until the time he vacated the same.

In some states it is the established rule that officers filling offices created by unconstitutional laws are, nevertheless, *de facto* officers, until, under direct proceedings, the act has been declared unconstitutional.

Thus, in *Burt v. Railroad Co.,* 37 Minn. 472, it was held that the municipal court of Mankato was a *de facto* court, and that there can be a *de facto* office under an unconstitutional law creating it, until the act is declared void.

In the case of *Trumbo v. The People,* 75 Ill. 561, a school district had been illegally established. The supreme court of Illinois, reviewing the case in a

later opinion, *Leach v. People ex rel.*, 122 Ill. 420, said:

"So far as that alleged district was concerned, there was no such legal district, and there was no *de jure* office of school director of that alleged school district."

Yet, upon a proceeding to collect a tax, the tax was sustained, it being held that the school directors were officers *de facto*, and that, in collateral proceedings, the legality of the formation of the district could not be inquired into.

And, in *Commonwealth v. McCombs*, 56 Pa. St. 436, it is said:

"An act of the assembly, even if it be unconstitutional, is sufficient to give color of authority to the person acting under it."

These decisions are in conflict with the great weight of authority in this country. Under the facts of this case, it is not necessary to go the length of the rule laid down in the last above cited cases, and they are not here cited in approval, but as instructive examples of the lengths to which those courts felt constrained to go in carrying out what they conceived to be the plain mandate of public policy.

Our conclusion is, that Hon. Henry V. Johnson was discharging the duties of a legally existing office by virtue of an election under a charter provision declared invalid by this court, and that all of his acts in the discharge of the duties of such office must be upheld as the acts of a *de facto* officer.

As above stated, this was a proceeding in the county court upon the allowance of a claim against the estate of a decedent. Against the objection of the administrator, the wife of the claimant gave material testimony in favor of her husband.

Section 4822, 2 Mills' Ann. Stats., so far as pertinent, is:

"All persons, without exception, other than those specified in the * * * second * * * section of chapter 104 of the general laws, may be witnesses. Neither parties nor other persons who have an interest in the event of an action or proceeding shall be excluded."

The second section above referred to is section 4816, Mills' Ann. Stats., and, so far as pertinent, is:

"That no party to any civil action, * * * or person directly interested in the event thereof, shall be allowed to testify therein * * * by virtue of the foregoing section, when any adverse party sues or defends as the * * * administrator * * * of any deceased person."

The argument is, that, as the claimant was incompetent because the defendant defended as an administrator, therefore his wife was incompetent, not, because she was a party or directly interested, but on account of public policy, it being conceded that section 4822, *supra,* expressly removes the disqualification of interest, but, being silent as to public policy, the common law prevails.

The rule of common law relied upon is thus stated by Chancellor Kent:

"The husband and wife cannot be witnesses for or against each other in a civil suit. This is a settled principle of law and equity, and is founded as well on the interest of the parties being the same, *as on public policy.*"

Numerous cases from Illinois and two from New Hampshire are cited in support of the argument. These authorities are not in point, for the reason that the statutes of this state and the statutes of the states from which the authorities are cited, are radically dissimilar.

Until the act of 1883 (Session Laws 1883, 289), the laws of this state as to the competency of wit-

nesses, and of Illinois and New Hampshire, were practically the same. By the act of 1883 the first sentence of section 4822, 2 Mills' Ann. Stats., was enacted, which is:

"All persons, without exception, other than those specified in the next three sections, and in the second, third, fourth, seventh and eighth sections of chapter 104 of the general laws, may be witnesses." (The sections excepted above are in no wise pertinent to the case under consideration.)

No similar provision is found in the statutes of Illinois or New Hampshire. The act of 1883 also repeals section 5, chapter 104, of the general laws of 1877, which provides, in substance, that no husband or wife shall, by virtue of section 1, be rendered competent to testify for or against each other as to transactions or conversations during the existence of the marital relation or thereafter, subject to certain exceptions therein stated.

From the foregoing statement of the statutes as they existed at the time this case was tried in the court below and now exist, it is manifest that it was the intention of the legislature, by the act of 1883, to entirely remove the disqualification theretofore resting upon husband and wife on account of the marriage relation, or, as stated by Chancellor Kent, *on account of public policy*.

In this connection the observation made by Mr. Justice Hayt in *Hutchinson v. Hutchinson*, 16 Colo. 349, 352, seems pertinent:

"By our modern statutes, the rights and privileges of married women in reference to property have been very much enlarged. She may now, with us, own, buy, sell and hold property, both real and personal, in her own right, the same as if she were not married. These rights necessarily required a modi-

fication of the common-law rule in reference to evidence. And such modification has been made by statute.''

In *King Shoe Co. v. Chittenden,* 16 Colo. App. 441, Mr. Justice Gunter said:

''There is no limitation on common-law competency by section 4816. Its effect is to exclude the cases enumerated in section 4816 from the operation of section 4822. The combined effect of sections 4816 and 4822, so far as material to the question before us, is to enlarge common-law competency so as to embrace all persons except those within section 4816, and, as to those, to leave competency as at common law.''

We therefore conclude that this contention of plaintiff in error is not tenable.

At the trial, a deposition taken by the administrator was introduced and read by claimant. Attached to this deposition as an exhibit was a letter written by the claimant to the deponent after the death of decedent, in which claimant set forth in detail the amount and character of the services rendered by him to the decedent, upon which services his claim against the estate was based. Objection to the introduction of this exhibit was overruled. In this there was error. The claimant being disqualified as a witness by virtue of section 4816, *supra,* no self-serving statement made by him in the form of a letter could be competent evidence.

In response to hypothetical questions based upon statements contained in the letter just referred to, expert witnesses testified to the value of the services rendered by the claimant to decedent. Objections to these questions and answers were overruled. There was no competent evidence adduced upon which to base the questions.

It is error to allow an answer to a hypothetical question which does not conform to the facts in evidence.—*Wells v. Adams,* 7 Colo. 26, 28.

Hypothetical questions cannot be based upon suppositions of which there is no evidence, tendency of. evidence, nor any offer of evidence.—8 Enc. Pl. & Pr. 759, 760, and cases.

The errors committed were without prejudice to plaintiff in error. Entirely disregarding the letter above referred to and the testimony of the expert witnesses, there was sufficient competent and uncontroverted evidence to warrant the judgment.

The judgment will be affirmed.

Decision *en banc.*                    *Affirmed.*