No. 14,691.

PEOPLE EX REL. WADE *v.* DOWNEN.

(108 P. [2d] 224)

Decided September 16, 1940.   Rehearing denied December 9, 1940.

Mr. ARTHUR C. GORDON, Mr. ARTHUR H. LAWS, for plaintiff in error.

Messrs. LANGDON & BARBRICK, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

A PROCEEDING in quo warranto on the relation of James L. Wade was instituted in the district court of Pueblo county charging that the respondent, Thomas J. Downen,

without any warrant or authority of law had intruded into, usurped, and was unlawfully holding and attempting to exercise the office of a member of the real estate brokers board and to perform unlawfully the duties incident thereto. Issue was joined by respondent upon the court's order to show cause why the relief prayed for in the petition should not be granted. A trial to the court resulted in written findings for respondent which both parties apparently assume, and which we shall assume, constitute a final judgment in the case. The relator prosecutes a writ of error challenging the correctness of the district court's findings and judgment.

The facts were stipulated, and briefly are as follows: Wade, the relator, asserted his right to the office in question by virtue of an appointment thereto on April 22, 1939, by the Governor of the state of Colorado, and Downen, the respondent, asserted his right to retain the office upon which he had entered by virtue of an appointment by the Secretary of State March 20, 1939. If the appointive power to fill the office resides in the secretary of state the judgment is correct and should be affirmed. If it resides in the governor it is erroneous and should be reversed. This was the sole issue before the district court and is the only one presented here for determination. It is raised by appropriate assignments of error. Other assignments point out certain provisions of the Constitution which it is contended will be violated if the judgment is permitted to stand. These are not here set forth because in our view of the case the issue may be resolved on other than constitutional grounds.

The real estate brokers board was created by an act of the Legislature in 1925, the same being chapter 147 of the 1925 Session Laws. Section 3 thereof was as follows: "There shall be a board of three members appointed by the governor which shall assist and advise said secretary of state in the administration of this Act. This board shall be known as the real estate brokers

board and shall consist of real estate brokers who have had not less than ten years experience in the real estate business in Colorado. The governor shall appoint one member for a term of one year, one member for a term of two years, and one member for a term of three years. Upon the expiration of the term of office of any member the governor shall appoint a member for a term of three years. Members of the board shall serve without salary but shall be entitled to actual expenses for each day of active service. No license shall be issued until the application for the license shall have been reported upon by a majority of the real estate brokers board. No license shall be suspended or revoked until said brokers board shall have made its majority recommendation to the secretary of state." By chapter 149 of the Session Laws of 1929, section 3, supra, was amended. As amended it now appears as section 30 of chapter 15, '35 C.S.A., and is as follows: "There shall be a board of three members appointed by the governor which board shall assist and advise said secretary of state in the administration of this subdivision. This board shall be known as the real estate brokers board and shall consist of real estate brokers who have had not less than ten years' experience in the real estate business in Colorado. The members of the board now in office appointed by virtue of the subdivision hereby amended shall continue to hold office for the term for which they were appointed unless they sooner resign, are removed, die or their office becomes vacant for any other reason. Members of the board appointed hereafter shall hold office for a period of three years. Upon the death, resignation, removal or otherwise of any member of the board the governor shall appoint a member to fill out the unexpired term.

"Each member of this board shall be allowed a salary of ten dollars ($10.00) per day and his actual expenses for each day of active service.

"The said board shall conduct or cause to be conducted examinations to determine the competency of applicants for license. No license shall be issued until the application for the license shall have been reported upon favorably by a majority of the real estate brokers board to the secretary of state. No license shall be suspended or revoked until said brokers board shall have made its majority recommendation to the secretary of state." In 1933 an act was passed known as the Administrative Code of 1933, which appears as chapter 37 of the 1933 Session Laws, and as chapter 3, '35 C.S.A. The provisions of this act pertinent to the present litigation are designated by their section numbers as they appear in chapter 3 of '35 C.S.A., and are as follows:

"§5. (a) The chief executive officers of administrative departments of the state government created by this chapter shall have charge and general supervision of their respective departments, and shall exercise such powers and perform such duties as are vested by this chapter in the respective departments, except where detailed matters of policy are expressly conferred by law to any subordinate officer in the respective administrative departments.

"(b) The officers, assistants and employees of the departments created by this chapter shall be under the immediate supervision, direction and control of the heads of the respective departments, and shall perform such duties as shall be prescribed.

"§6. Except as hereinafter provided, such officers, assistants and employees as may be necessary in each department shall be appointed by the chief executive officer of such department, subject to the approval of the executive council, in conformity with the provisions of article XII, section 13 of the constitution of Colorado, and the laws enacted in accordance therewith." Article XII, section 13, of the Colorado Constitution relates to civil service.

"§15. The department of state shall consist of the following offices and divisions:

"1. Division of administration, the head of which shall be the secretary of state. This division shall include the office of the secretary of state, which, except as otherwise expressly provided in this chapter, shall continue as now organized and existing.

"2. The division of registrations. This division shall consist of the following examining boards, which shall continue as now organized and existing, except as otherwise expressly provided in this chapter; provided, that all examining boards shall be furnished with quarters in the capitol building, the museum building, or the state office building, and shall be required to pay into the general revenue fund of the state, out of the fees and other revenues collected by them, such monthly or annual charges for rental, heat, light and telephone service, as the executive council shall determine; * * *

"o. Real estate brokers board. * * *"

The sole power of appointment of the members of the real estate brokers board was expressly conferred by section 30 of chapter 15, '35 C.S.A., which is a part of the act creating the board, upon the governor. This is conceded by respondent. Unless the law conferring the power has been repealed it is still the law of the state and the governor possesses the power of appointment. It is not expressly repealed by the Administrative Code Bill of 1933. This is conceded by the defendant in error. If it is repealed at all it is by implication. It would seem scarcely necessary to repeat the rule we have so often announced that repeals by implication are not favored, and that it is only where there is a manifest inconsistency or conflict between a later and earlier act, that a repeal by implication will be held to have occurred. Among the cases announcing this rule are the following: *In Re Funding of County Indebtedness,* 15 Colo. 421, 24 Pac. 877; *Board of Commissioners v. Davis,* 94 Colo. 330, 30 P. (2d) 266; *Nelson v. Nelson,* 72 Colo.

20, 209 Pac. 810. Such being the test to determine whether a repeal by implication has resulted, a general repealing clause in the later statute is of little value in throwing light on the question. *Dunton v. People ex rel.*, 36 Colo. 128, 87 Pac. 540; *Harrington v. Harrington,* 58 Colo. 154, 144 Pac. 20; *People ex rel. v. Board of Commissioners,* 86 Colo. 249, 281 Pac. 117. That such should be the rule is obvious, for there can be no repeal by implication unless there is a clear inconsistency, and a general repealing clause operates only as to statutory provisions which are inconsistent. Clearly if two acts may be so construed that an inconsistency will be avoided and both upheld, it is the duty of courts to so construe them. *Hodgkins v. Ashby,* 56 Colo. 553, 139 Pac. 538. The test here therefore is, Can the two acts involved be so harmonized that each may be effective without interfering with the reasonable operation of the other? Specifically stated as applicable to the instant case, the question is, Can a board appointed by the governor, the function of which as created was to assist the secretary of state, the head of one of the executive branches of the state government when the act creating the board was passed and amended, still so function to assist him notwithstanding the passage of the Administrative Code Bill of 1933? We must assume that the General Assembly thought that such a board, although appointed by the governor, could assist the secretary of state in the administration of the real estate brokers law, for it specifically provided for the appointment of such a board by the governor for that purpose. The Administrative Code Bill set up a department of state with the secretary of state as the chief executive officer and placed the real estate brokers board in one division of that department, but it did not change in any degree either the duties of the board or the duties of the secretary of state with respect to the licensing of real estate brokers, the revocation of their licenses, or as to any other supervision or control of real estate brokers grant-

ed by the act of 1927, as amended by the act of 1929. The Administrative Code Bill contains intrinsic evidence that the legislature saw no inconsistency in the members of the board as it existed in 1933, and who had theretofore been appointed by the governor, continuing to assist the secretary of state until the expiration of their terms of office, for it expressly provided by section 15 thereof, that the real estate board should continue as then "organized and existing, except as otherwise expressly provided in this chapter." There is no other provision in the Administrative Code Bill which expressly mentions the real estate brokers board. The reference in section 15 relates to the *board*, not to its members. The board was organized, that is, given organs or members to make it effective for its purpose, and it existed by virtue of the appointment by the governor of men to serve upon it as was then by law provided. If there is now such a manifest inconsistency that the acts can not stand, the legislature evidently did not deem it vital as to the remainder of the terms of the members of the board in office when the Administrative Code Bill was passed. Furthermore, it may be noted that the General Assembly saw nothing repugnant to the objectives of the Administrative Code Bill in expressly giving the governor the power to appoint the state board for vocational education, article 6, chapter 3, '35 C.S.A., although this board was to be, when organized and brought into existence, a part of the department of education of which the state superintendent of public instruction is the chief executive officer. The argument of the respondent is in effect that if such board had been created and the power of appointment expressly given to the governor by a separate act existing at the time the Administrative Code Bill was passed, that such existing act would be repealed by implication as to the appointive power, by the Administrative Code Bill of 1933, and that power transferred to the superintendent of public instruction because the situation

created would be repugnant to the objectives of the Administrative Code Bill. We are unable to follow this line of reasoning. Repugnancy between an existing act and a later act, if such there be, is inherent in, depends upon, and is determined by, the provisions of the two acts. It is merely the legal result of the two acts standing concurrently unrepealed on the statute books. If they may stand and be given effect if different parts of the same act, they also may be effective if they are parts of different acts. We find no inherent inconsistency in leaving the appointive power of members of the real estate brokers board where the general assembly expressly placed it, in the governor, the chief constitutional executive officer of the state, notwithstanding that board is placed in a legislatively created department of state, of which the secretary of state is made by the Administrative Code Bill the chief executive officer.

So to hold in this case is in no wise inconsistent with our ruling in the case of *People ex rel. v. Bixby,* 102 Colo. 583, 81 P. (2d) 880. The question there involved was whether the commissioner of hail insurance should be appointed by the state board of hail insurance, which, under chapter 111, Session Laws of 1929, was appointed by the state board of agriculture, or by the governor, as head of the executive department as constituted by the Administrative Code Bill of 1933. The division of agriculture was one of the divisions of the executive department so created and the state hail insurance department was expressly made one of the subordinate departments of the division of agriculture. '35 C.S.A., c. 3, §10, par. 8. In the Bixby case we used language that clearly distinguishes the appointment there in question—that of an officer necessary in the hail insurance department—from the one in the instant case, which involves the appointment of a member of a board that forms one of the constituents of the department of state under the Administrative Code Bill. The mentioned language is as follows: "It is apparent that under section 6 of article 1,

the officers and employees necessary in each department shall be appointed by the chief executive officer of that department, subject to the approval of the executive council, in conformity with the provisions of article XII, section 13 of the Constitution of Colorado, and the laws enacted in accordance therewith. This appointive power or the power to appoint a commissioner of hail insurance for one of the subordinate administrative divisions of the executive department is clearly vested in the governor of the state of Colorado as the chief executive officer of the administrative department in which the department of hail insurance was placed. The power to appoint such officers, assistants and employees as are necessary in each department is clearly vested in the chief executive officer of the department, except as is otherwise provided in the act. It is not pointed out, and no claim is made, that there is any exception to be found in the act which would apply to the action of the Governor herein claimed by plaintiff to be unauthorized."

Reiterating in other words what we already have said, this case merely holds that the appointee was a subordinate officer, a commissioner of the hail insurance department, which was one of the agencies under the division of agriculture of which the director of agriculture created by the code bill was the head. The division of agriculture in turn was itself only one of the constituent parts of the executive department under the code bill of which the governor was made the chief executive officer. The situation presented is not paralleled by the instant case, but would be analagous to one in which the real estate board itself, as a subordinate agency of the department of state, of which the secretary of state is the chief executive officer, attempted to appoint an officer or employee to serve under the board. Clearly under section 6, supra, such prerogative is vested in the secretary of state. The department of state was created by merely grouping the various already existing

**566**

constituent boards and commissions. Until such grouping was made by the code bill there was in the present sense no department of state. It is the "officers, assistants and employees" necessary in each department after it becomes such—not the officers necessary to constitute it—that section 6 of the code bill gives the executive head of the department power to appoint. The opinion in *People ex rel. v. Bixby* so holds.

Judgment reversed.

MR. CHIEF JUSTICE HILLIARD not participating.

MR. JUSTICE BAKKE dissents.