No. 19,557.

EILEEN MARSHALL, ET AL. *v.* THE CITY OF GOLDEN, ET AL.
(363 P. [2d] 650)

Decided August 21, 1961.

Mr. BEN KLEIN, Messrs. CREAMER & CREAMER, for plaintiffs in error.

Messrs. BRADLEY, CARNEY & JOHNSON, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFFS in error appeared as plaintiffs in the trial court and we will so refer to them. We will refer to defendants in error as the city or the city council.

Plaintiffs are taxpaying electors residing in Golden, Colorado, within the boundaries of a purported improvement district known as Golden Downtown General Improvement District, which allegedly was organized pursuant to the provisions of C.R.S. '53, 89-4-1, et seq. They objected to having the property owned by them included in the district, and within the time provided by the statute, and in the manner provided thereby, they filed the action in the district court to have determined the question as to whether the district was legally organized.

As we view the controversy, all pertinent questions of

fact are presented here by stipulation of counsel for the parties. These agreed facts raise but a single question of law. We will accordingly make reference only to those facts which bear directly upon that question.

We are concerned with a construction of two provisions of the statutes governing the affairs of cities of the second class. The City of Golden is a city of that class and a long time prior to the election of the officers here involved, had adopted the City Manager form of government as provided for by C.R.S. '53, 139-6-1 to 22. We think it important to direct attention to the fact that the municipal election involved in this controversy, which took place November 3, 1959, was not the election which changed the form of government to a City Manager operation. That change had been brought about at a much earlier date.

The instant controversy arises out of the fact that the city council as it was constituted on October 8, 1959, passed on first reading the ordinance creating the district. At the election five of the old council members were re-elected and four new members were elected. The only hearing shown to have been had with reference to the ordinance or formation of the district was held November 5, 1959. That hearing was held with members of the old council acting in their official capacity as councilmen.

On November 12, 1959, there was a meeting of the old council of Golden. The minutes of that meeting appear in the record. At that meeting "Councilman Crawford moved, Councilman Dillingham seconded that the meeting be adjourned sine die. All Councilmen voted in the affirmative. The Mayor declared the motion carried." Thereupon the new council took office. The city clerk asked that the newly elected councilmen rise and be sworn into office as councilmen for the City of Golden, and District Judge Quiat administered the oath of office to the new council. Much business was then transacted by the new council in organizing and making appoint-

ments. There was then considered the matter of the instant district.

"File No. 592-24  ORDINANCE NO. 445  'AN ORDINANCE ORGANIZING THE GOLDEN DOWNTOWN GENERAL IMPROVEMENT DISTRICT PURSUANT TO THE PROVISIONS OF 89-4-1 ET. SEQ. CRS '53.'"

The new council then adopted the ordinance creating the district by passing the same on second reading.

It is argued by counsel for plaintiffs that the ordinance was not legally adopted because hearings were held before a different council than the one which adopted the ordinance, and that one body of men sitting as the council passed the ordinance on first reading and a different body of men, purporting to act as the city council, passed the ordinance on second reading. It is argued that C.R.S. '53, 139-4-1 precluded the newly elected councilmen from functioning in an official capacity until "the first Monday after the first Tuesday in January following their election," at which time their term of office commenced. This section provides in pertinent part:

"The qualified electors of the cities of the second class * * * shall elect, on the first Tuesday in November * * * two aldermen from each of the several wards, who shall hold their respective offices for the term of two years, commencing on the first Monday after .the first Tuesday in January following their election. * * *"

C.R.S. '53, 139-15-5 provides, inter alia:

"The members of the council elected for each city, * * * on the first Monday after the first Tuesday in January following their election in cities of the second class, shall meet and organize the city council * * * ."

On behalf of the city it is argued that C.R.S. '53, 139-6-6 is controlling. This chapter sets forth the procedures to be followed in cities of the second class who desire to reorganize as a City Manager form of government. The section of the chapter relied on by the city contains the following:

"The election of the members of the council shall be conducted in other respects as provided by law for the election of officers of the municipality prior to its adoption of the provisions of this article. The old municipal government shall continue in office until the completion of said election, the canvass of the votes thereof and the declaration of the results thereof." 139-6-7 provides in part:

"At the first meeting of the council following every regular municipal election, the council shall choose * * * one of its members as chairman * * * ." This section also is relied on by the city.

We think another statutory provision has a definite bearing on the controversy. The section is C.R.S. '53, 139-6-4, in which we find:

"(1) All laws of the state applicable to the municipality before the adoption of the city council-city manager form of government and not inconsistent with the provisions of this article shall apply to and govern such reorganized municipality."

█ Under well established rules of statutory construction, if the foregoing provisions can reasonably be construed to be consistent with each other, it is our duty to so construe them. If two acts of the legislature may be so construed that an inconsistency will be avoided and both upheld, it is the duty of the court to so construe them. *People ex rel. Wade v. Downen,* 106 Colo. 557, 108 P. (2d) 224; *People v. Rapini,* 107 Colo. 363, 112 P. (2d) 551.

██ The purpose of C.R.S. '53, 139-6-1, et seq., is to define and establish the procedure under which a city of the second class may change its governmental structure to the City Council-City Manager form of government. The portion of section 6 of that article which reads, "The old municipal government shall continue in office until the completion of said election, the canvass of the votes thereof and the declaration of the results thereof" applies exclusively to that municipal election

at which the question of the adoption of a new form of city government is submitted. It was the intention of the legislature to provide for the reorganization of the city government immediately following the election at which the change was authorized. Once the reorganization has been accomplished the provisions of the general statutes relating to cities of the second class apply, and C.R.S. '53, 139-4-1, provides specifically that in all second class cities, not under charter, the council members "shall hold their respective offices for the term of two years, commencing on the first Monday after the first Tuesday in January following their election." By the foregoing construction of these statutory provisions no inconsistency results.

It follows that when the individuals elected to membership in the city council on November 3, 1959, assumed to act as council members on November 12, 1959, they were not qualified to act officially. Their term of office did not begin until the first Monday after the first Tuesday in January, 1960. The only city council authorized to act prior to that date was the city council as it was constituted at the time the ordinance was introduced and passed upon first reading.

The judgment is reversed.

MR. JUSTICE DOYLE dissenting:

Originally I concurred in what has now become the majority opinion of the Court en banc. This concurrence was in a departmental determination. Now, following rehearing and further argument I find that I must disagree with the majority for these reasons:

(1) This is a collateral attack upon the validity of the improvement district and the proper parties are not before us; and (2) The case should be decided on its merits because a legislative body was at the time in existence. The council had at least a *de facto* existence and was possibly a *de jure* council.

(1) We have repeatedly held that the only manner by which the validity of a public corporation can be tested is by direct attack. *People ex rel. Dunbar v. South Platte Water Conservancy District,* 139 Colo. 503, 343 P. (2d) 812; *Burns v. District Court,* 144 Colo. 259, 356 P. (2d) 245. In *Enos v. District Court,* 124 Colo. 335, 238 P. (2d) 861, this court said:

"Municipal corporations of the character involved are created only upon the authority of the state by legislative enactment, and are, if created thereunder, solely for public and not private purposes, and become an arm of the state. The right to exist as such a corporation is derived solely from the state and any action aimed to attack its legal existence after it becomes at least a de facto corporation must be confined to the state through its official representative, and such official representative in the absence of a statute, cannot delegate such authority. Here the assumed relator has no interest in the subject matter distinct from the general public in the territory involved, and there is no denial that, in the last analysis, he was acting in his individual capacity * * * ."

(2) I fail to see any legal justification for the present collateral attack. This case should be tried upon the merits. Some governing body was in existence capable of enacting necessary legislation. Five members of the "old" council were also members of the "new" council. Thus there was at least a "de facto" if not a "de jure" council. A glaring weakness in the majority opinion is its conclusion that there was no council in existence. Either the old council was not dead and a quorum was present, or a council consisting of five duly elected and properly sworn members joined with four newly elected but not properly sworn members to form a de facto council. In either case the adoptive procedures were effective. *Butler v. Phillips,* 38 Colo. 378, 88 Pac. 480.

Mr. Justice McWilliams joins in this opinion.