### UNITED STATES v. THIRTEEN CRATES OF FROZEN EGGS.

(District Court, S. D. New York. November 21, 1913.)

FOOD (§ 24*)—"ADULTERATED FOOD"—DECOMPOSED EGGS.

Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1911, p. 1354) § 2, prohibits the introduction into one state from another state of any article of food which is adulterated. Section 6 declares that the term "food" shall include all articles used for food, whether simple, mixed, or compound; and section 10 provides for the seizure and condemnation of any article of food that is adulterated within the meaning of the act and which, having been transported in interstate commerce, remains unsold, etc. *Held* that, where decomposed canned eggs, which had not been denatured and therefore could have been used either for food or tanning purposes, were shipped in interstate commerce from one warehouse of the owner to another, they were "an adulterated article of food" within the definition and meaning of the act, and it was no defense to a proceeding by the United States to condemn them that the owner intended that they should be used only for tanning purposes.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 17; Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 3, p. 2856; vol. 1, p. 211.]

Libel by the United States for condemnation under the Pure Food and Drugs Act (Act Cong. June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1911, p. 1354]) of thirteen crates, each containing two cans of frozen eggs claimed by Armour & Co. Judgment for plaintiff directing verdict of condemnation.

H. Snowden Marshall, U. S. Atty., and Addison S. Pratt, Asst. U. S. Atty., both of New York City.

Breed, Abbott & Morgan, of New York City, for Armour & Co., claimant.

RAY, District Judge. The claimant, Armour & Co., of Chicago, Ill., having a plant and place of business there, is a purchaser of and dealer in eggs and other food products, not a producer. At Chicago, Ill., it purchased and had on hand these eggs in question and others like them. They were released from the shells and frozen but by reason of decay had so far decomposed that they were not fit for human food or consumption as such. As unfit for human consumption these with others had been selected and segregated by claimant at Chicago, Ill., from their other eggs. It is conceded that these eggs had reached such a stage of decomposition as to come within the definition and description of "adulterated" article of food if handled, shipped, or sold, or in-

tended to be shipped and sold as an article of food. Eggs in this condition may be sold and used as an article of food, or for tanning purposes (that is, for use in the tanning of leather), and claimant had sold eggs of this description, selected and segregated at the same time as these, to a tannery or tanning firm located and doing business at a point not far distant from Chicago for tanning purposes. It had not shipped or sold any of its eggs of this description to be used and consumed as an article of food and did not contemplate doing so.

The 13 crates of frozen eggs seized and sought to be condemned in this proceeding were shipped by the claimant, Armour & Co., in interstate commerce from Chicago, Ill., to New York City, N. Y., where that corporation had and has a warehouse and place of business and had been received there, but had not been sold or disposed of or offered for sale when the seizure was made. There are tanneries in the vicinity of New York, and in fact the intention of the claimant in so transporting these eggs in question from Chicago to New York was to offer them for sale and dispose of them, if possible, at New York for use in tanning and not for use or consumption as food. This intention or purpose of the claimant had not been disclosed in any way or manner to any person or by any labeling or branding. The eggs in question had not been denatured or subjected to any chemical or other process. They were rotten, decayed eggs, unfit for human food, and came within the definition "adulterated" for the reason they consisted in whole or in part of a filthy and decomposed or putrid animal or vegetable substance. See subdivision 6, section 7, of the Food and Drugs Act of June 30, 1906, 34 Stat. 768. By section 6 of the act it is provided that "the term food as used herein shall include all articles used for food * * * whether simple, mixed or compound." By section 2 the introduction into one state from another state " * * * of any article of food * * * which is adulterated * * * within the meaning of this act, is hereby prohibited." Section 10 provides for the seizure and condemnation of "any article of food * * * that is adulterated * * * within the meaning of this act" and which, having been transported in interstate commerce, remains unsold, etc.

The contention of the United States is that eggs are an article of food and that they remain such if not denatured or subjected to some chemical process which destroys them as an article of food, and that when they become decomposed and therefore unfit for food they are, within the meaning of the act (section 7, subd. 6), an adulterated article of food and subject to the condemnation of the act. The contention of the claimant is that, while the eggs prior to decomposition were an article of food, when decomposed they have lost their character as an article of food if the owner does not intend to use, transport, or sell them as an article of food but does intend to transport them and sell them for tanning purposes only and transports them for that purpose only. The contention is that an undisclosed intent to transport in interstate commerce and sell decomposed eggs, which are actually unfit for food, for use in tanning only takes the same out of the category of "adulterated article of food."

The difficulty with this contention is that these eggs, or eggs of this

character, not denatured, come squarely within the definition of an adulterated article of food. The character of the thing does not depend on the intent or purpose of the owner in transporting it or selling it, or the purpose the owner may have in selling it. It seems to me clear that the purpose of Congress was to prohibit the transportation of articles in interstate commerce which come within the definition given in the statute and make them subject to seizure and condemnation if so transported. If such is not the purpose, then interstate commerce may be flooded with eggs of this character and the government will be compelled to prove that the intent of the one transporting the article was to use or sell same as an article of food. Even if the burden is not shifted and the presumption is that it was intended to use or sell such an article as food or as an article of food, still the owner so transporting the article will escape the operation of the statute by swearing to an undisclosed intent which the government will be unable to disprove, unless the article has been actually put on sale or sold as an article of food. If these eggs had been denatured so as to destroy them as an article of food (that is, take them outside the statutory definition of "adulterated" article of food), the case would be entirely different. It is no hardship to give a construction to this pure food and drugs act which will make it effective and accomplish the purpose intended so long as it is not made oppressive. In all cases of the transportation of frozen eggs so far decayed as to render them unfit for human food, the owner may denature them before shipping or perhaps label them; but in any event, so long as the statute stands as it does, the transportation in interstate commerce of frozen eggs, or eggs not frozen but so far decayed or decomposed that it may be said they consist "in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance," is prohibited, as eggs, whether the contents of the shell be therein or removed and in cans or other receptacles and frozen or unfrozen, are an article generally and almost universally used and dealt in as and for food and are adulterated when they consist of a "decomposed animal or vegetable substance." Eggs are either an animal or a vegetable substance. Clearly they are not a mineral substance. The title of the Food and Drugs Act declares it to be:

"An act to prevent the manufacture, sale or transportation of adulterated, or misbranded, or poisonous, or deleterious foods, drugs, medicines and liquors, and for regulating traffic therein; and for other purposes."

Would it be an answer to the seizure and attempted condemnation of a car load of partly decomposed beef being transported from Chicago to New York, for the owner to say, "I did not intend it to be used or sold in New York for food, but as soap grease or a fertilizer"; such purpose not having been in any manner disclosed? Philadelphia Pickling Co. v. U. S. (C. C. A. 3d Circuit) 202 Fed. 150, 120 C. C. A. 429, while not on "all fours" with this case in all its facts, is, it seems to me, on "all fours" in principle, unless it can be said that inasmuch as partially decayed eggs, a decomposed article of food, having become unfit for food, are no longer an adulterated article of food, but an article for use in tanning leather, and hence not within the act at all as they may be and sometimes are used for that purpose. This con-

tention cannot be sustained. If decomposed eggs were incapable of being used for food, as in making cakes and the like, the case would be different. The construction of this Pure Food and Drugs Act contended for by this claimant would open the door to the unrestrained transportation in interstate commerce of partially decomposed eggs, as the owner and dealer would, it might be honestly, transport them for sale in another state for use in tanning and actually, so far as he is concerned, sell them for that purpose or to some one claiming to purchase them for such purpose, when in fact the purchaser was intending to use them as an article of food or to dispose of them to some one to mix with flour, etc., and use as an ingredient in an article of food, such as cake, etc.

In Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, the object of this Pure Food and Drug Act is declared to be:

"To keep adulterated articles out of the channels of interstate commerce, or if they enter such commerce to condemn them while in transit, or in original or unbroken packages after reaching destination; and the provisions of section 10 of the act apply not only to articles for sale but also to articles to be used as raw material in the manufacture of some other product."

In that case the "other product" was an article of food as the eggs were to be used for baking purposes, but I do not see that such fact affects the force of the decisions as to the purpose of the act, which is to prevent the transportation in interstate commerce of adulterated articles which these eggs, within the definition of the lawmaking body, are conceded to have been.

Eggs released from the shell, and frozen or unfrozen, are an "article of food," and, if adulterated, their transportation in interstate commerce is prohibited, and the act says (section 7):

"That for the purposes of this act an article shall be deemed to be adulterated * * * in the case of food: * * * Sixth. If it consists in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not," etc.

The fact that decomposed eggs ought not to be used for food or as an ingredient of some food article does not remove them from the category of adulterated article of food, they being within the statutory definition, nor does the fact that they may be used for tanning purposes. If the statute is to be construed so as to make it effective to prevent the interstate transportation of eggs, decomposed or partly decomposed, and hence unfit for human consumption, and thus carry out the intent and purpose of Congress, the eggs in question must be held to be within the operation of the act and subject to condemnation.

There will be an entry directing a verdict of condemnation and a judgment accordingly.