No. 14,202.

FERCH *v.* THE PEOPLE.
(74 P. [2d] 712)

Decided November 29, 1937. Rehearing denied December 27, 1937.

472

Mr. Mandell Levy, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Reid Williams, Assistant, for the people.

473

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

This matter presents a review of a conviction of the plaintiff in error, defendant below, for the alleged sale, or offering for sale, of bad eggs for human consumption.

The facts briefly stated are as follows: Defendant conducts a small place of business known as the Hollywood Egg Market within the Home Public Market in the City and County of Denver, where he deals in eggs exclusively. On January 2, 1936, about 6:30 P. M., Esta D. Parr, a state food and drug inspector, entered defendant's place of business to make an inspection. He found the defendant engaged in candling eggs in a small room, constituting the back part of his place of business. Parr took a dozen eggs from those which the defendant was taking out of a case for candling; also he took one partly filled can of eggs, and two full ones, which he found on the floor, and, after paying the defendant for the eggs, he left. One can of the eggs he submitted to witness Scott, who was a city food inspector, another can, to the federal inspector, and the dozen eggs to John Miller, state egg and poultry inspector, for analysis.

On February 7, 1936, defendant was arrested on a warrant from the justice court.

The charging part of the information against him was as follows: "P. H. Ferch, was then and there a duly licensed retail dealer in eggs as provided by law, did knowingly, willfully and unlawfully sell, offer and expose for sale, and have in his possession with intent and for the purpose of sale and distribution, and for the purpose of use for human consumption, diseased, corrupted, and unwholesome provisions, to wit: eggs, which eggs were then and there filthy, decomposed and putrid, in this, to wit, that said eggs contained mould, blood-rings, blood spots, bloody white, black rot, white rot, mixed rot, and which eggs were wholly unfit for human consumption

and the use of which was then and there injurious to the health of the users thereof; contrary to the form of the statute in such case made and provided, and against the peace and dignity of The People of the State of Colorado,'' adopting composite language of the ''Sixth'' paragraph of section 7, chapter 69, '35 C. S. A. (1001 C. L. '21), commonly known as the ''Pure Food and Drug Act,'' and section 12, chapter 128, '35 C. S. A. (S. L. '33, p. 774, §2), often referred to as the ''Egg Law,'' but the caption of the complaint, warrant and recognizance designated the charge as ''Violation State Food and Drug Act,'' c. 69, '35 C. S. A. (c. 30, C. L. 1921).

Following trial and conviction in the justice court, defendant appealed to the county court, where he was again found guilty by a jury.

All of the analysts testified, as a result of their examination, that most of the eggs showed considerable amount of ''blood-spots,'' ''chicken manure and generally dirty,'' and had a bad odor and were ''rots'' and ''bloods.'' No evidence to impeach the qualifications of these witnesses appears.

The evidence showed that a short time before the examination was made, the defendant had received 1½ cases of eggs marked ''bloods'' with the notation ''not for human consumption'' on the invoice.

Witness Jeanette Miller testified that she had purchased from defendant, eggs similar to those contained in the cans taken by Parr, a short time before he made his inspection.

Ten assignments of error are made, only two of which require our attention for the purpose of disposing of this case: (1) That the defendant was convicted under a statute which had been repealed by implication; (2) that the court erred in admitting certain evidence.

It is agreed that the only section of the Colorado Pure Food and Drug Act (section 7, chapter 69, supra) which the defendant could have been charged with violating is paragraph ''Sixth'' of said section, which reads as fol-

lows: "If it [the food] consist in whole or in part of a filthy, decomposed, or putrid animal, or vegetable substance, or any portion of an animal unfit for food, whether manufactured, or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter."

Urged in support of the contention that defendant was convicted under a statute which has been repealed, is that the trial court imposed a fine of $50, which was permissible under said chapter 69, supra, whereas, under section 16, chapter 128, supra, the court is only authorized to assess a fine of not more than $25 for the first offense, and it is not disputed that this was defendant's first offense.

■ ■ However, we are not satisfied that chapter 128, supra, repeals, even by implication, the language quoted above from section 7, chapter 69, supra. The law does not favor repeal by implication, and if we were to adopt the defendant's reasoning in this case, there would not be much left of the Pure Food and Drug Act. Meat is an article of food covered by that act, and yet, we have special legislation relating to meat, its inspection and sale, conduct of slaughter houses, etc.; milk is an article of food, as are also fruits and vegetables, and yet, we have special legislation respecting these matters. Repeals by implication are never upheld, unless there is a repugnancy or an irreconcilable conflict between the statutes under consideration. We find no such conflict here, and hold that said "Sixth" paragraph of section 7, chapter 69, supra, was not and is not repealed.

■ Does the complaint and information then charge an offense under said "Sixth" paragraph? We think it does. The selling of unwholesome provisions to be used for human consumption was an indictable offense at common law, 26 C. J. 751. Decomposed eggs have been held to be within the meaning of the Federal Pure Food Law. *United States v. Thirteen Crates of Frozen Eggs*, 208 Fed. 950.

The penalty imposed by section 2, chapter 69, supra (the Pure Food and Drug Act), is for selling or exposing for sale, adulterated food or drugs. The penalty imposed by section 16, chapter 128, '35, C. S. A. (S. L. '35, p. 921, §1), covers all goods offered for sale or sold (Egg Law, '35, C. S. A., c. 128, §12).

In each instance, we think that the exposing for sale on the one hand, and the offering for sale on the other, was a question of fact for the jury. It has been held that one can, sold to the inspector for purpose of analysis, is sufficient, and "for sale" includes "all articles, compound or single, not intended for consumption by the producer." *Hipolite Egg Co. v. U. S.*, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364. The defendant here said that the bad eggs he had in his place of business were for sale to owners of fox farms and for feeding hogs, but the jury believed otherwise.

There is no denying that this matter was carelessly conducted by both sides. Assuming that an attempted charge under the Pure Food and Drug Act was void, that did not nullify the warrant where it stated an offense under a valid statute. The affidavit and warrant must be construed together. 16 C. J. 307; *Cliff v. People,* 84 Colo. 254 at 258, 269 Pac. 907.

The defendant could have compelled the district attorney to elect upon which statute he was going to rely. Instead he chose to rely on "a motion to quash the complaint or information," but in doing so he failed to comply with the provisions of section 481, chapter 48, '35 C. S. A. (§7094, C. L. 1921), requiring such motions to be in writing. *Critchfield v. People,* 91 Colo. 127, 13 P. (2d) 270. On the other hand, the Attorney General proceeds on the theory that the charge under the Pure Food and Drug Act was void, but the one under the Egg Law was valid, when he could have relied on either since the proof would have been the same. Defendant admits being charged with selling rotten eggs, and a con-

viction on that charge was fully justified under either statute.

There is no need to consider the insufficiency or impropriety of the evidence. Whatever defendant complains of could have been covered by proper instructions. He submitted none. He offered no objections to those given, which covered fairly the law on the issue.

One correction in the judgment of the trial court is necessary. There is an inconsistency in the matter of the fine of $50 which was imposed. On this, the later statute, i. e., section 16, chapter 128, supra, is determinative, and the trial court is hereby directed to reduce the fine to not to exceed $25.

Otherwise, the judgment is affirmed.

Mr. Chief Justice Burke, Mr. Justice Hilliard and Mr. Justice Holland concur.