UNITED STATES of America

v.

TECHNICAL EGG PRODUCTS, INC., a Corporation, and Curtis-Parks, Jr.

No. 796.

United States District Court
N. D. Georgia,
Gainesville Division.

Feb. 6, 1959.

Charles D. Read, Jr., Acting U. S. Atty., Atlanta, Ga., for the United States.

Howard T. Overby, Gainesville, Ga., for defendants.

SLOAN, District Judge.

This proceeding is brought under § 302(a) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 332(a)) in which the United States seeks to restrain alleged violations of § 301 of the Act (21 U.S.C. § 331).

The United States contends that the defendant, Technical Egg Products, Inc., and the individual defendant, as manager of the Gainesville plant of the corporate defendant, are engaged in the business of purchasing, receiving, candling and packing a product known in the trade as incubator reject shell eggs and that the defendants have been and are now introducing and causing to be introduced and delivered for introduction into interstate commerce such incubator reject shell eggs which the United States contends are adulterated within the meaning of § 402(a) (3) of the Act (21 U.S.C. § 342(a) (3)).

The defendants by their answer admit that they are engaged in the business of purchasing, receiving, candling and packing incubator reject shell eggs and admit that they are causing them to be introduced and to be delivered for introduction into interstate commerce, but they deny that such reject shell eggs are a food and deny that their operation is in violation of any provision of the Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. § 301 et seq.).

A show cause order was issued and on January 30, 1959, the matter came on to be heard, the evidence being presented by affidavit. Affidavits were introduced by plaintiff and defendants, briefs and statements of counsel have been received and the matter is now before the Court for determination and the Court makes the following findings.

### Findings

1. Incubator reject shell eggs are shell eggs that have been placed in incubators and kept under a constant temperature of 98 degrees Fahrenheit for varying numbers of days up to 20, but resemble in external appearance shell eggs as commercially marketed and are a food within the meaning of § 201(f) of the Act (21 U.S.C.A. § 321(f)).

2. A large percentage of the incubator reject eggs are inedible and fall within the classification of inedible eggs, i. e. mixed rots, black rots, blood rings and dead embryos and are therefore adulterated within the meaning of the Federal Food, Drug, and Cosmetic Act, § 402(a) (3) (21 U.S.C.A. § 342(a) (3)).

3. The defendants are introducing and causing to be introduced and delivered for introduction into interstate commerce, incubator reject eggs which are adulterated.

4. The Court finds that there is danger of such adulterated food being diverted to food use by breaking out and otherwise removing the egg from the shell and mixing the egg with magma and freezing in cans for distribution to bakeries and similar food industries that customarily use frozen eggs as a raw material.

### Conclusions of Law

This Court has jurisdiction of the case by virtue of the provisions of Title 21 U.S.C.A. § 332.

Section 331 of Title 21 U.S.C.A. prohibits the introduction into interstate commerce of adulterated foods and §

342(a) (3) provides "food shall be deemed to be adulterated * * * (3) if it consists in whole or in part of any filthy, putrid or decomposed substance, *or if it is otherwise unfit for food.*" (Emphasis supplied.)

The affidavit of the defendant, Curtis Parks, Jr., states as follows:

"That he is manager and resident agent of the Georgia Branch of Technical Egg Products, Inc., a Tennessee corporation. That the said corporation is in the inedible egg business and that from these infertile inedible eggs various technical products are produced, such as tanner's yolk and technical albumen, and that none of said products which are produced by Technical Egg Products, Inc., go into human food channels."

■ The term "food" as used in the Federal Food, Drug and Cosmetic Act must be read in such a way that it includes, but is not limited to items which are unfit to be consumed. The test for determining whether an item is a food under the Act can not be one of intended use. United States v. 52 Drums Maple Syrup, 2 Cir., 110 F.2d 914. It must of necessity be one which regards items as food which are generally so regarded when sold in a food form. Thus a rotten egg is one differing only in degree rather than kind from a sound egg. Eggs being sound or rotten are food under the statutory definition. If a dealer in inedible eggs, such as the defendants here, desires to utilize the channels of interstate commerce, with immunity from the provisions of the Federal Food, Drug, and Cosmetic Act, it is necessary that he change the very nature of the product in which he deals. So long as the product retains a semblance of the identity it possessed as a food, the product must be considered as a food. United States v. Thirteen Crates of Frozen Eggs, 2 Cir., 208 F. 950, affirmed, 2 Cir., 215 F. 584.

■ The plaintiff is entitled to an injunction by virtue of the provisions of § 332 of Title 21 U.S.C.A. Let the temporary restraining order be prepared and presented and let it be specific in its terms enjoining the defendants herein, their agents, attorneys and servants until the further order of the Court from shipping or causing to be shipped in interstate or foreign commerce the incubator reject eggs unless they are first denatured so as to render them incapable of being used for food.