## No. 28165

**The People of the State of Colorado v. The District Court for the Second Judicial District, State of Colorado, and the Honorable Susan Graham Barnes, as one of the Judges thereof**

(585 P.2d 913)

Decided August 28, 1978.

250

Dale Tooley, District Attorney, O. Otto Moore, Assistant, Brooke Wunnicke, Chief Appellate Deputy, for petitioner.

John A. Purvis, Acting State Public Defender, Lee Belstock, Deputy, for respondent.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The People have brought this original proceeding pursuant to C.A.R. 21, seeking relief in the nature of prohibition or mandamus. We issued a rule to show cause, and now discharge the rule.

This proceeding arises from the same criminal action involved in *People v. District Court,* 195 Colo. 14, 575 P.2d 7 (1978), and a full statement of the case is set out in that opinion. It is sufficient here to repeat that the defendant below is a minor, born June 9, 1961, charged with several violent sexual assaults, all allegedly committed when he was fourteen and fifteen years old. His case was transferred from the Denver juvenile court to the respondent district court pursuant to section 19-1-104, C.R.S. 1973. On May 25, 1977, the defendant pleaded guilty to one count of second-degree sexual assault and one count of attempted first-degree sexual assault.

Since that time, the respondent court has held several hearings in an attempt to resolve the difficult question of the sentence or treatment to be imposed on this young offender. Psychiatric evaluation reports submitted to the court uniformly indicated that releasing the defendant in his present

condition could involve severe threat of harm to others, and therefore the disposition decided upon should ensure an extended term of confinement with as much intensive psychiatric treatment as possible.

The respondent court, considering that the primary objective of a sentence should be to minimize the likelihood that such violence would be repeated, adopted as her overriding consideration the protection of society from future violent conduct by the defendant. This apparently straightforward goal, however, presented a very real dilemma. Expert psychiatric testimony uniformly indicated that if psychiatric treatment — as opposed to incarceration — were employed, there was some hope, albeit "guarded," for improvement in the defendant, and thus for reducing the risk to others upon his ultimate release. Because of the very limited facilities, resources, and personnel available in Colorado institutions, however, such treatment — at a high security juvenile facility — would be available only for a relatively short term.

On the other hand, the same experts also testified that, while incarceration at the state penitentiary or reformatory might be more secure and could probably be imposed for a longer period, such incarceration would undoubtedly aggravate the defendant's aggressive, anti-social character problems. Unfortunately no significant psychiatric treatment programs of the type needed by the defendant would be available at any institution where he could be sentenced as an adult to long-term confinement.

In other words, the respondent court was told that there was a possibility, but not a certainty, that the defendant might ultimately rejoin society as a safer risk if afforded psychiatric treatment as a juvenile, but the chances of his improving if incarcerated as an adult without treatment were practically nil. Thus, the question presented was whether society would be most effectively protected by an order of incarceration that would provide higher security for its duration but which would inevitably turn the defendant free — almost certainly as a more dangerous person — or by a shorter treatment program with at least some hope of reaching this still young defendant and overcoming or at least ameliorating the underlying problems which had led to his violent conduct.

Faced with choosing the lesser of two evils, the respondent court concluded that "the greatest option for treatment and possible correction of this problem" lay in invoking the resources of the Juvenile Division of the Department of Institutions, rather than the adult correctional system. Therefore the trial court, exercising her option to sentence the defendant as a juvenile as expressly provided in section 19-1-104(4)(c), C.R.S. 1973, confined the defendant for treatment in the Closed Adolescent Treatment Center. This is a facility created and designed for detaining and treating violent juvenile offenders. Commitment was for an indeterminate period, up to the maximum available, two years. The respondent court expressed its intention to retain jurisdiction to order further detention or treatment,

perhaps within the adult system, at the end of that period.

 In this original proceeding, however, the People contend that the respondent court had no authority to sentence the defendant as a juvenile rather than as an adult. The People did not so contend in the trial court while the trial judge was considering sentencing alternatives. In fact, as stated, one of the statutes then under consideration by the trial court was section 19-1-104, C.R.S. 1973, which on its face, seems expressly to authorize the action taken by the trial court. The People argue, however, that the Mandatory Sentencing Act, section 16-11-309, C.R.S. 1973 (1976 Supp.), has precluded such a disposition of the case even as to juvenile defendants, if they have been convicted in district court of a "crime of violence."[1] The People assert that a repeal by implication has produced this result. We disagree.

 Repeals by implication are not favored. *Casados v. People,* 119 Colo. 444, 204 P.2d 557 (1949); *Ferch v. People,* 101 Colo. 471, 74 P.2d 712 (1937). When two apparently contradictory statutes relate to the same subject matter and two alternative constructions are possible, one of which will result in giving effect to both statutes, while the other will invalidate one statute, we will adopt the interpretation that gives effect to both statutes rather than the one which results in repeal of the earlier statute by implication. *People in the Interest of M.K.A.,* 182 Colo. 172, 511 P.2d 477 (1973); *Casados v. People, supra.* Here, the two sentencing provisions are not in irreconcilable conflict. Rather they can sensibly be read together to give effect to both provisions. This solution is particularly appropriate where, as here, one statute is general in its application while the other is specific.

 A statute that is specific in its terms is not repealed by a later statute which is in general terms. *People ex rel. Roberg v. Bd. of Commissioners of Chaffee County,* 86 Colo. 249, 281 P.117 (1929); *People v. Burke,* 185 Colo. 19, 521 P.2d 783 (1974). For general legislation to work a repeal of a preexisting special provision, the intent to do so must be clear and unmistakable. *Denver v. Rinker,* 148 Colo. 441, 366 P.2d 548 (1961); *People v. Burke, supra.*

The two statutory provisions here at issue provide in pertinent part, as follows:

"(4)(c) Whenever criminal charges are either transferred to or filed directly in the district court pursuant to the provisions of this article, the

---

[1] A "crime of violence" is "a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission of a crime of murder, first or second-degree assault, kidnapping, sexual assault, robbery, first-degree arson, first or second-degree burglary, escape, or criminal extortion, or during the immediate flight therefrom, or who caused serious bodily injury or death to any person, other than himself or another participant, during the commission of any such felony or during the immediate flight therefrom." Section 16-11-309(2), C.R.S. 1973 (1976 Supp.).

judge of the district court shall have the power to make any disposition of the case that any juvenile court would have and shall have the power to remand the case to the juvenile court for disposition at its discretion." Section 19-1-104(4)(c), C.R.S. 1973.

"*Mandatory sentences for violent crimes*. (1) Any person convicted of a crime of violence must be sentenced to at least the minimum term of incarceration provided for such offense, without suspension . . . ." Section 16-11-309, C.R.S. 1973 (1976 Supp.).

■ Section 19-1-104(4)(c) specifically authorizes discretion in the district court in the sentencing of a special class of individuals, juveniles. Section 16-11-309, the mandatory sentencing statute enacted later in time, applies to all persons and is general in nature. No clear and forceful evidence was presented which would indicate that the legislature intended to repeal the special provision for discretionary sentencing of juveniles by the enactment of the general mandatory sentencing statute. The fact that the general provision applies to "any person convicted of a crime of violence" is not sufficient indication by the legislature of an intent to repeal sentencing acts that apply only to special types of individuals. *People v. Burke, supra*.[2] Because of the absence of a clear declaration of legislative intent to the contrary, we adopt the statutory construction which upholds the continued viability of the earlier specific act, section 19-1-104(4)(c).

These considerations of statutory construction are particularly apropos here. The Mandatory Sentencing Act[3] here under consideration was adopted in 1976 as a broad, general provision. The General Assembly included no language indicating expressly any intention to repeal or modify existing special statutes governing the sentencing of sex offenders[4] or juveniles. In 1977, another general mandatory sentencing act was passed,[5] again without expressly repealing, modifying or otherwise mentioning the preexisting special sentencing acts. Finally, in the 1978 Special Session, the legislature extended the effective date of the Mandatory Sentencing Act,[6] apparently to provide an opportunity to reconsider some of its provisions. Again, there was no mention of repeal or modification of either the district court's authority to deal with juveniles or the special provisions for sentencing sex offenders.

In view of all the recent legislative debates repeatedly spotlighting mandatory sentencing in all its aspects, it seems likely that if there had

---

[2] In that case, we held that the general Colorado probation statute which by its terms applied to *all* crimes (except two enumerated offenses) did not repeal by implication the mandatory sentencing provision of an earlier enacted statute applying to the specific offense of driving under suspension.

[3] Section 16-11-309, C.R.S. 1973 (1976 Supp.).

[4] Colo. Sex Offenders Act of 1968, Section 16-13-203, C.R.S. 1973.

[5] Section 16-11-309, C.R.S. 1973 (1977 Supp.).

[6] H.B. 1001, chap. 1 of Sess. Laws of Colo., 1978, 1st Extraordinary Sess., p. 2.

been any intention to repeal the special authority for sentencing juveniles provided by section 19-1-104(4)(c) that intention would have been expressed. In any event, if we have drawn the wrong inference, it will be a simple task for the General Assembly to declare a contrary intention by expressly repealing or modifying section 19-1-104(4)(c) at the next regular session four months hence.

Accordingly, we hold that the respondent court acted within its jurisdiction in exercising the sentencing option allowed by this statute.

Therefore, the rule to show cause is discharged.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. JUSTICE KELLEY does not participate.