No. 12,330.

THE PEOPLE EX REL. ROBERG *v.* BOARD OF COUNTY COMMISSIONERS OF CHAFFEE COUNTY.

Decided September 16, 1929.

Mr. A. L. Jeffrey, for plaintiff in error.

Mr. Wallace Schoolfield, Mr. Thomas A. Nevens, for defendant in error.

*En Banc.*

Mr. Justice Adams delivered the opinion of the court.

This is an election contest, brought by Roberg, plaintiff, a qualified elector of Chaffee county, against the board of county commissioners of that county, protesting against the removal of the county seat from the town of Buena Vista to the city of Salida.

A special election for the purpose of determining the question of removing the county seat from Buena Vista was held on November 6, 1928, concurrently with the general election for state and county officers. The result was that not less than two-thirds of all the votes

cast were in favor of the city of Salida for the future county seat, and it was so certified by the board of canvassers. Plaintiff instituted his contest in the district court, but it was decided adversely to him. He brings error to review the judgment.

Plaintiff contested on two grounds, the first of which was alleged failure to give legal notice of the special election. He has abandoned and does not argue such ground in this court, and now relies on his remaining claim that in eight election precincts in the city of Salida, there was no registration whatsoever for such special election, and that therefore the entire vote cast in such precincts must be discarded, and thus defeat the removal from Buena Vista to Salida. Eliminating 53 blank ballots which were cast but not counted, the result in the entire county stood as follows: for Buena Vista, 942 votes; for Salida, 2288; total, 3230 votes; none for any other town or city. In the eight Salida precincts referred to, a total of 2360 votes were cast, 234 of which were for Buena Vista, and 2126 for Salida. If plaintiff succeeds in having the votes in these eight precincts thrown out bodily for lack of registration therein as contended, the case must be reversed, and the county seat remain at Buena Vista. Otherwise the judgment in favor of Salida must be affirmed.

A stipulation of facts, signed by counsel for both parties, shows, inter alia, in addition to certain facts admitted in the pleadings: That on October 11, 1928, the board of county commissioners of Chaffee county ordered the special election referred to, to be held at the time named pursuant to law; that the county clerk was instructed to give notice thereof to the legal voters of said county, who have resided in the county six months and the election precinct ninety days next preceding such election, to designate upon their ballots at such election, the place of their choice for the location of the county seat of said county; that pursuant to said order, said special election was held at the same time and place

as the general election; that there was published in the regular issues of certain newspapers, a notice of special registration for the special election on such question, the names of the judges and registers of the election, times and places where registration would be held in each precinct, and other essential information, which notice was issued under the hand and seal of the county clerk of Chaffee county. A further notice of the special election, also by the county clerk, was published. The sixth and concluding paragraph of the stipulation reads as follows:

"6. That the persons appointed by the board of county commissioners of Chaffee county, Colorado, to act as judges and registers of election for said special election sat in said several election precincts on October 23rd and November 5th, 1928, and made a list of names intended to be used and which was used, at said special election as the registration lists of the voters of the several precincts."

1. The essential facts are undisputed, and there is but one main legal proposition, the determination of which is decisive of the case; i. e., the legality of the Salida registration. The assertion in the complaint that there was no registration is not justified by the facts. It is contradicted by the stipulation above quoted, particularly by the sixth paragraph thereof. The election officials followed the procedure prescribed in subdivision III, sections 8649 to 8656, both inclusive, C. L. 1921. This is "An Act to Regulate Elections for the Removal of County Seats;" Session Laws, 1881, page 103, and subsequent amendments thereto. This law was passed pursuant to the mandate of section 2, article 14, of the Colorado Constitution, hereinafter quoted. The artificial point of cleavage upon which counsel for plaintiff predicates his argument, is that this 1881 statute is a nullity, in that it is repealed by implication. The manner in which plaintiff's counsel believes the 1881 act to have been repealed is hereinafter more fully referred

to. Such counsel, having thus supposedly disposed of the obstacles of the 1881 act, thereupon finds no difficulty in reaching his conclusion that there was no registration at all, and therefore no election. Such a view is so diametrically opposed to ours that it calls for further brief comments.

2. The law concerning removal of county seats has its incipiency in section 2, article 14, of the state Constitution, which reads as follows: "The general assembly shall have no power to remove the county seat of any county, but the removal of county seats shall be provided for by general law, and no county seat shall be removed unless a majority of the qualified electors of the county, voting on the proposition at a general election, vote therefor; and no such proposition shall be submitted oftener than once in four years, and no person shall vote on such proposition who shall not have resided in the county six months and in the election precinct ninety days next preceding such election."

In obedience to the above constitutional direction, the legislature passed the 1881 act and amendments thereto, concerning the location and removal of county seats, which act will be found in sections 8649 to 8656, C. L. 1921. It is still in full force and effect. The first five sections of the 1881 statute are the only ones necessary to be considered here. They read as follows:

"8649. * * * That whenever an election shall be ordered by the board of county commissioners of any county to ascertain the sense of the legal voters of such county upon the question of removal or location of the county seat of such county, it shall be the duty of such board of county commissioners to appoint special judges and registers of such elections, and to provide a special ballot box in each voting precinct, in which shall be deposited all the ballots cast at such election in such precinct on the question of location or removal of the county seat.

"8650. * * * It shall be the duty of the judges and

registers so appointed to make a special registration of the voters of each precinct who have resided in the county at least six months and in such precinct at least ninety days prior to the day designated for holding such. election, which day shall be the day designated by law for holding a general election, and no other.

"8651. * * * The election shall be held at the same places at which the general election is ordered to be held, but the vote for or against removal or location of the county seat shall be by a special ballot, separate and distinct from the general ticket voted at said election, which ballot shall be deposited in the special ballot box provided for in section 1 of this act, and no vote shall be counted for or against said removal or location which is not deposited in such special ballot box as herein provided.

"8652. * * * No county seat shall be removed until the expiration of thirty days after the canvass of the votes had by the county canvassers upon the question of location or removal, nor until the board of county commissioners of such county shall have made and entered of record on their journal an order directing such removal, which order the said board shall make within thirty (30) days after the county canvass is completed, unless enjoined or restrained from so doing by an order of the district court of said county or the judge thereof, or by the supreme court.

"8653. * * * All laws now in force relating to elections shall apply to elections held upon the question of removal or location of county seats, except that the question of location of such county seat shall be contested in the district court of said county in the first instance, but may be removed to the district court of any other county under the provisions of the code relating to change of the place of trial, and shall be also subject to appeal or writ of error to the supreme court; *Provided,* That not less than two-thirds of all the legal votes cast

shall be necessary to effect the removal of the county seat of any county in this state."

Salida is classified as a city of the second class, with a population of not less than 2,000, nor more than 5,000. It is the theory of counsel for plaintiff that the method for registration of voters for the special election in question is determined by chapter 67 of the 1917 Session Laws, "An Act Concerning the Registration of Qualified Electors," sections 7603 to 7635, both inclusive, C. L. 1921. We proceed to the consideration of this contention. We give due force to the 1881 and 1917 acts. They are both living statutes, but on questions relating to the removal of county seats, the special act of 1881 must be looked to first for details to be followed, as was done by the election officials in the instant case. It is the paramount law on the subject, in connection with the constitutional provisions which it carries out. The 1881 act, however, is not exclusive; the special 1881 act and the general election laws are to be construed together. This is quite apparent from C. L. 8653, above quoted, which was a part of the original 1881 act. This section ties the two statutes together. But manifestly, parts of the 1917 law are not workable in registrations for county elections concerning the removal of county seats. For instance, the qualifications of electors voting on this subject are greater than those required at general elections. In votes for removal of county seats, the requirements for residence in the county are six months, and in the precinct, ninety days next preceding the election. §2, art. 14, Colo. Const.; C. L. §8650. In general elections, on the other hand, the requirements for residence in the county are but ninety days, in the city or town, thirty days, and in the ward or precinct, ten days. C. L. section 7525. Further, to change the county seat, a two-thirds vote is required. C. L. section 8653; *Alexander v. People*, 7 Colo. 155, 2 Pac. 894, but in ordinary elections, a majority is sufficient. The exaction by the registration officials of the

extra requirements of the Constitution and 1881 law, certainly did not hurt the plaintiff. It afforded him a benefit that he was entitled to, and got.

3. A further distinction consists in special ballot boxes for votes on the question of removing a county seat. C. L. §§8649, 8651. Another difference is in separate sources of authority for judges and registration officials. On the removal question, the county commissioners make the appointment (C. L. section 8649), but in other elections in cities with a population of not less than 2,000 nor more than 5,000, the county clerk appoints the registration committee, under the guidance of county chairmen of political parties (C. L. sections 7606 and 7607). There is no jumble of duties, nor clash of authority, and no political party question is here involved. Each committee has its separate statutory authorization and distinct functions to perform under the law, all of which are specific and intelligible. We have given only a few instances, illustrative of the several purposes of the 1881 and 1917 acts. They might be multiplied, but it is unnecessary. In short, the act passed in the year 1917 is but a handmaiden to the 1881 law as far as any question here is concerned. For the ascertainment of the qualifications of an elector voting on the subject of removal of a county seat, such voter is not called upon to run the gantlet of duplicate or conflicting registration committees, for there are none such. His clearance papers are good and he is eligible to vote on the county seat proposition if he passes muster before the registration committee appointed by the board of county commissioners under the 1881 act. All of the voters whose ballots were counted underwent this test, wherefore plaintiff has no case.

4. The concluding paragraph of the 1917 act does not appear in the 1921 Compiled Laws. It is found on page 213 of the 1917 Session Laws, and reads as follows: "Section 34. Chapter 8 of the Laws of 1894, ap-

proved March 2, 1894, and all acts and parts of acts inconsistent with this act, are hereby repealed."

The above does not repeal the 1881 act, either expressly or impliedly. As we have pointed out, the 1881 and 1917 acts are not inconsistent. Repeals by implication are not favored. *In re Funding of County Indebtedness*, 15 Colo. 421, 430, 24 Pac. 877; *Lovelace v. Tabor Mines & Mills Co.*, 29 Colo. 62, 65, 66 Pac. 892; *Dunton v. People*, 36 Colo. 128, 87 Pac. 540; *Harrington v. Harrington*, 58 Colo. 154, 159, 144 Pac. 20; *Hewitt v. Landis*, 75 Colo. 277, 281, 225 Pac. 842.

■ ■ 5. If the provisions of two statutes can be construed as to stand together, it will be done. *Dunton v. People, supra; Schwenke v. Union Depot and R. R. Co.*, 7 Colo. 512, 516, 4 Pac. 905; *Kollenberger v. People*, 9 Colo. 233, 235, 11 Pac. 101. We are not disposed to hold that when the legislature obeyed the constitutional direction to provide by law for the removal of county seats, it thereafter repealed by implication the only specific statute on the subject, and left in the air the manner of determining the qualifications of those entitled to vote on the subject, or relegated it to inferences under the general election laws. The common rule is that general statutes do not repeal special statutes by implication. *Rice v. Goodwin*, 2 Colo. App. 267, 269, 30 Pac. 330.

■ 6. It may be taken as true, as it undoubtedly was, that there were some informalities and innocent departures from the strict letter of the law on the part of the election board. But they were all done and performed in furtherance of a conscientious determination on the part of such officials to ascertain, with painstaking care, who was, and who was not, entitled to vote at such special election. The results so show and the evidence justifies this conclusion. There are no charges of fraud. On the contrary, counsel for plaintiff candidly and commendably disclaims such imputations. No registration at all, and an imperfect registration, are quite different. An election of town trustees without registration of

258

voters, or attempt at registration, has been held to be void. *Fish v. Kugel,* 63 Colo. 101, 165 Pac. 249. Counsel for plaintiff relies on that case, but it is not in point, as will be seen by its marked contrast with the stipulation of facts which counsel for both parties signed in the matter before us. There *was* a special registration in the present case, and the special election was held pursuant thereto. Cases in which gross election frauds were perpetrated, thus tainting the whole result, like *Vigil v. Garcia,* 36 Colo. 430, 87 Pac. 543, and *People v. Lindsey,* 80 Colo. 465, 253 Pac. 465, have no bearing on the present matter except to emphasize the sharp contrast between them and the cause before us.

█ 7. Plaintiff's statement of contest ends with a significant anti-climax. It purports to give one by one, the names of all who voted at the special election, but fails to enumerate a single qualified voter who was denied the right to vote, or the name of any person whatsoever who voted without possessing the necessary qualifications. Plaintiff thus unconsciously paid a high tribute to the efficiency of the registration, but his statement of contest and evidence have wholly failed. There was an attempt in his replication to overcome the disaster of this vital omission, by an assertion that it is impossible to separate the qualified voters in the Salida precincts from those not qualified. The plea was bad under the facts and circumstances here disclosed. It was not based on fraud or other substantial error; it was pleaded under the untenable theory of no registration. And it is pertinent to observe in this instance, that if, as plaintiff declares, among the 2,360 Salida votes cast, he cannot name even one of them who was not entitled to vote, then we cannot tell either, nor can anyone else, and the hiatus cannot be supplied by imagination.

█ Prima facie, the special election was regularly conducted. If it was not so held, the burden was on plaintiff to show it, but he offers nothing to convince us

that there was not a full, fair, open, free and lawful manifestation of the will of the qualified electorate of Chaffee county, that the county seat should be changed to Salida. The presumption in Salida's favor is therefore conclusive.

Counsel for plaintiff, as well as counsel for defendant, have presented their several contentions with an ability and freedom from evasion that is highly agreeable to us. No point has been overlooked, but the simple fact is that the town of Buena Vista was lawfully outvoted in a special election held pursuant to law. The judgment will therefore be affirmed.