No. 14,990.

CROSSWHITE *v.* THE PEOPLE.
(137 P. [2d] 399)

Decided May 3, 1943.

Mr. A. B. Crosswhite, Mr. Carl Cline, Mr. Kenneth L. Smith, for plaintiff in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

This proceeding was instituted by the filing of an information in the district court of Mesa County charging plaintiff in error, who was the defendant in the trial court, with the sale of 92 barred rock pullets of the value of more than twenty dollars, the pullets being a portion of 625 pullets which she had previously mortgaged, the sale being "contrary to the provisions of said mortgage and without the written consent of the mortgagee." Defendant was found guilty and sentenced to a term of not less than two and a half nor more than eight years in the state penitentiary. For a review of this judgment she brings the case here by writ of error, asking that the writ be made a supersedeas and operate accordingly. In compliance with her formal request, we have elected finally to determine the cause on the supersedeas application.

Fourteen different errors were assigned by the defendant, two of which we now consider. The second assignment arises out of the pleadings. At the beginning of the trial counsel for defendant moved to quash the information on the ground that it was defective and insufficient in that it did not allege criminal intent. In the original information intent was alleged, but in the

amended information, on which the defendant was actually tried, the portion alleging intent was eliminated. The trial court held the information sufficient and overruled the motion.

 The trial court ruled that the information was based upon section 19, chapter 32, '35 C.S.A. of the chattel mortgage act, and not upon section 85, chapter 48, '35 C.S.A., relating to larceny. It is agreed that under the former section the mere commission of the forbidden acts constitute larceny. It therefore was not necessary, under this statute, to allege or prove intent. However instruction No. 6 given by the court contained the statement, "that intent is an element in this case."

The people contend that the amended information is drawn in the words and language of section 19 of the chattel mortgage act supra. The charge contains the statement that the defendant "did then and there wilfully, unlawfully, knowingly, and feloniously, during the existence of the lien and title created by the mortgage, transfer, sell, and dispose of a part of said mortgaged property." Said section 19 provides inter alia that if a mortgagor of chattels shall, during the existence of the lien, "transfer, conceal, take, drive, carry away, or otherwise dispose of any of the mortgaged property, * * * he shall be deemed guilty of larceny." The people argue, "the rule is that, if the statute creating the offense is silent concerning the intent, there need be no intent alleged."

 Counsel for defendant argues, in addition to the similarity between the words in the information and the words under section 85, chapter 48, supra, that section 85, having been adopted by the legislature in 1921, in effect repeals or supersedes section 19, chapter 32, '35 C.S.A. of the chattel mortgage act, which was passed by the legislature in 1917; that the 1921 act, dealing with larceny, embraces within its scope the subject matter of the 1917 amendment to the chattel mortgage act. A study of the history of these two acts does not convince

us that counsel's contention is tenable. Section 2 of the chattel mortgage act, S.L. '87, page 75, amending the previous general statute (sec. 171, c. XIV, G.S. '83), provides: "If the mortgagor of any chattels, or other person, during the existence of the lien or title created by such mortgage, shall transfer, conceal, take, drive, carry away, or otherwise dispose of any of the mortgaged property, contrary to the provisions of the mortgage, and without written consent of the mortgagee, he shall be deemed guilty of the larceny of such property, and upon conviction be punished accordingly." Under the previous statute the unlawful disposing of mortgaged property was not larceny but simply a misdemeanor, subject to the penalty for misdemeanor. In 1891 the legislature, in amending the criminal code pertaining to larceny, for the first time included a provision that larceny may also be committed "by any mortgagor of personal property, which has been mortgaged in pursuance of the laws of this State, during the existence of such mortgage, who shall sell, transfer or in any way encumber such mortgaged property, or any part thereof; or cause the same to be sold, transferred or encumbered, or by any mortgagor of personal property, or any other person who, during the existence of the lien or title created by such mortgage, shall transfer, sell, take, drive, carry away, or otherwise dispose of, any mortgaged property, contrary to the provisions of the mortgage, and without the written consent of the mortgagee. Such mortgagor, or other person shall be deemed guilty of larceny, the same to all intents and purposes as if there had been a felonious taking and conversion of such property by such mortgagor. * * * " S.L. '91, p. 124, §1. The fact that this provision respecting larceny was added to the criminal code in 1891 does not seem to have been interpreted as having repealed the very similar provision of the chattel mortgage act of '87.

We upheld the constitutionality of the chattel mortgage act of 1917 in *Lowdermilk v. People*, 70 Colo.

459, 202 Pac. 118, and applied the act. The amendment of the chattel mortgage act in 1917, section 16, merely changed the words in the singular "the mortgagee" to the plural "all mortgagees" in the clause, "without written consent of all mortgagees," and was clearly passed in order to cover explicitly a situation where there was more than one mortgage of the chattels involved. The only change that the legislature made in 1921 to the definition of larceny under the criminal code was that it added a clause, hereinafter italicized: " * * * Every person, convicted of larceny, where the article or thing stolen or removed, shall exceed the value of twenty dollars, *and every person who, within the period of not exceeding six months, commits the crime of larceny twice or more from the same person, where the aggregate value of the things stolen or removed shall exceed the value of twenty dollars* * * *." S.L. '21, c. 91, §1. It is clear that these two amendments which the legislature made in 1917 and 1921 were merely small clarifying amendments to the chattel mortgage act and the criminal code respectively, and that no inferences can be drawn from the amendments contained in those two acts of any intention of the repealing of one by the other. Rather, there is an inference that the legislature intended that the two acts should both remain effective and unchanged as existing prior to the respective amendments, except for the slight changes which occasioned the amendments.

The effect of the two amendments of 1917 and 1921 respectively was to leave the chattel mortgage and the larceny provisions under the criminal code after 1921 in the same relation to each other as they existed prior to 1917, i.e., both prior to 1917 and after 1921 the chattel mortgage act ante-dating the larceny provision in the criminal code. To argue that the 1921 larceny statute repealed the 1917 chattel mortgage act is to say that the 1891 larceny statute repealed the 1887 chattel mortgage act, and that after 1891 and until 1917 we had no penal

provision under the chattel mortgage act. We do not believe that such is the case. *Lowdermilk v. People, supra,* was decided November 7, 1921, and rehearing denied December 5, 1921—both dates well after the passage of the 1921 amendment to the larceny statute which was approved March 3, 1921.

We conclude that the trial judge was correct in holding that the information was drawn under section 19, chapter 32, '35 C.S.A., supra, and, although intent is not necessary to be proved under the chattel mortgage act, his instruction that intent was a necessary ingredient of the crime charged, in view of the fact that the jury found defendant guilty even under the burden of that additional condition, was not prejudicial to defendant.

The third assignment of error, based on the alleged erroneous admission of some of the testimony of complainant, arises out of the following happenings which occurred during the trial in the case. Joe Desrosiers, the chattel mortgagee, who was the complaining witness and who signed the information in the case, testified on direct examination that he knew that the defendant sold 92 barred rock pullets on or about August 7, 1940, to the Douglas Poultry; that he did not know what she received for them; that on or prior thereto nothing had been paid on his chattel mortgage; that he had given no written consent that the chickens covered by the chattel mortgage should be sold; that shortly after August 7th he had a conversation with defendant with regard to the sale of these barred rock pullets; that he asked her whether she had sold any and she said that she had sold a few; (Her testimony was that the chickens she sold were some that were not covered by the mortgage); that he asked her for possession of the remaining chickens, to which she objected. On cross-examination the witness admitted that he had no direct knowledge of the sale to which he testified on direct examination, i.e., he could not say that he had seen de-

fendant remove the chickens on which he had a mortgage and deliver them to the Douglas Poultry; that he first learned about the sale from defendant's hired man, Chuck Wilkerson, and, having so learned, that he went to the Douglas Poultry Company as a likely place where she might have disposed of them and was told that she had actually sold some chickens there. That it was following those events that he had the conversation with defendant related in the direct examination.

On redirect examination Desrosiers testified in detail concerning his conversation with Chuck Wilkerson and what the latter had told him. The purport of Wilkerson's story was that he (Wilkerson) had brought into town from defendant's ranch two bunches of chickens and sold them for defendant at two different places; that he had told defendant where he had sold them, and that one of those places was the Douglas Poultry; that defendant had told him to take those chickens to certain parties, and that the chickens referred to were the plymouth rocks that he had gotten at the hatchery of Desrosiers the month previous. At the time of this redirect examination counsel for defendant objected to the admission of this testimony relating to the conversation between Desrosiers and Chuck Wilkerson, contending that he had merely asked whether Desrosiers' knowledge was based on a conversation he had had with Chuck Wilkerson, but that he had not gone into the details of the conversation. The trial court admitted the above mentioned testimony on the ground that counsel for defendant had interrogated the witness at some length in cross-examination as to the conversation, stating to counsel, "You opened it up yourself. Now the witness has a right to explain the entire conversation if he cares to."

We are of the opinion that the admission of the testimony of the witness Desrosiers detailing the conversation between himself and Chuck Wilkerson, defendant's hired man, was error. Counsel for defendant obtained

from Desrosiers on cross-examination an admission simply that his testimony as to the sale of 92 chickens under the mortgage was not given as of his own knowledge, but was based on a conversation he had had with Chuck Wilkerson. The purport of the cross-examination was simply to prove, and it did prove, that the witness Desrosiers' testimony on direct examination was not the testimony of a witness testifying to first-hand knowledge of a fact, but was testimony based on what some third party had told him. It went to prove that the testimony on direct examination was not direct evidence, but hearsay. When the trial court on redirect examination allowed testimony concerning all of the details of the conversation, including the narration not only of what Chuck Wilkerson himself had done but of what defendant had told Chuck Wilkerson (who in turn told the witness), there is presented a case of double hearsay.

Examination of the record confirms defendant's contention that the cross-examination did not go into the details of the conversation between Desrosiers and Chuck Wilkerson, but simply established the fact that the complaining witness' knowledge was based on what he had learned from Wilkerson. The reported statement of Wilkerson that the chickens which he had delivered and sold to the Douglas Poultry Company were the same chickens that he had previously obtained from the hatchery of the complaining witness Desrosiers was the only testimony directly establishing the identity of the chickens sold with those included in the chattel mortgage.

There was, of course, the evidence of Mrs. Anna Carter, who testified that defendant told her she "was in trouble, that she had sold mortgaged chickens," and as has already been noted Desrosiers testified to defendant's statement to him that she had sold a few. Defendant's testimony was, that the chickens that she sold were not the chickens covered by Desrosiers' mortgage. In view of this conflicting evidence as to the alleged ad-

missions of the defendant that she had sold mortgaged chickens, the statement of Wilkerson's, introduced as hearsay, identifying the mortgaged chickens as those delivered to the Douglas Poultry Company was particularly pertinent and damaging to defendant.

Under these circumstances, we conclude that the error in the admission of the questioned evidence was prejudicial.

We further believe that this Wilkerson statement is inadmissible not only under our Colorado practice but even under more liberal rules of admission of hearsay evidence existing in other jurisdictions.

This decision has been unduly delayed, due to unforseen circumstances affecting this court in 1942. These also necessitated the case's reassignment.

The judgment is reversed and the cause remanded; further proceedings, if any, to be in accordance with the views herein expressed.