No. 16,171.

Casados *v.* The People.
(204 P. [2d] 557)

Decided March 14, 1949.

Mr. O. Otto Moore, Mr. Arnold R. Gilbert, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

Plaintiff in error, to whom we shall hereafter refer as defendant, was charged by information, consisting of three counts, with (1) grand larceny; (2) receiving stolen goods; and (3) larceny of an automobile. He was found not guilty on count (1); count (2) was withdrawn; and he was convicted on count (3). No question is raised herein as to the sufficiency of the evidence to support his conviction.

The sole question presented is whether or not section 94, chapter 48, '35 C. S. A., the statute under which defendant was convicted, and which was adopted in 1915, was repealed by implication by the passage of section 21, chapter 16, '35 C. S. A., which was adopted in 1919. It is contended that defendant should have been charged, if at all, under the provisions of the latter act, since, as said, the former act was repealed by implication.

The 1915 act provides that any person who takes or removes an automobile from any garage, stable or other building without the consent of the owner and operates the same for his own profit, use or purpose "shall be deemed guilty of larceny and shall be punished accordingly." A violation of the 1915 act constitutes a felony and calls for punishment by confinement in the penitentiary for a term of one to ten years. '35 C. S. A., c. 48, §85.

Section 2 of the 1919 act, Extraordinary Session, chapter 7, reads as follows: "Any person or persons who shall without authority of the owner * * * willfully, wantonly, or maliciously * * * take away an automobile, the property of another, for the purpose of *temporarily* depriving the owner thereof of said automobile, or of the use of the same, or for the purpose of *temporarily* appropriating the same to his own use, or of *temporarily*

making use of the same * * * shall, upon first conviction, be deemed guilty of a *misdemeanor* and shall be punished by imprisonment of not less than *thirty days* nor more than *twelve months* in the *county jail* of the county where such conviction is had. A person convicted of a second or subsequent offense under the provisions of this section within five years of the first conviction, shall be guilty of a felony, and upon conviction shall be imprisoned in the state penitentiary not less than one year nor more than ten years; provided, however, that upon first conviction where the evidence shows that the person so convicted has previously had a good reputation, the court may, at any term of court, in its discretion, after pronouncing sentence, suspend the said sentence during the good behavior of the person so convicted and that during the said period for which said person was so sentenced, such person shall be required to report to the court as to his habits and behavior at such times as the court may direct, and at the expiration of the time prescribed in said sentence the person so convicted shall be deemed to have satisfied said sentence and shall be relieved from said sentence and suspension." (Emphasis supplied) Section 21, id., provides, "All acts or parts of acts in conflict herewith are hereby repealed."

This last provision manifests an intention on the part of the legislature that all previous enactments, including that of 1915, shall remain in full force unless there should be conflict between the latter act and the former, which, in the instant case, we have been unable to find.

The title to the 1915 act, chapter 68, S. L. '15, is: "An Act in relation to the larceny of automobiles and motor vehicles and providing penalties therefor."

The title to the 1919 act, chapter 7, S. L. '19, Extraordinary Session, is: "An Act relating to and concerning the theft of automobiles and automobile parts, equipment, attachments, accessories and appurtenances, and for the protection of the public against such thefts; for

the licensing, regulation and control of automobile dealers and garages; for bills of sale, certificates of ownership and assignments thereof; for the collection and distribution of all moneys collected under this act; for the administration and enforcement of this act by the secretary of state; delegating to the motor vehicle supervisor and motor vehicle license inspectors provided for in chapter 161 of the Session Laws of 1919 authority and power to enforce the provisions of this act; defining offenses and prescribing fines and penalties for violations of this act; and repealing all acts or parts of acts in conflict herewith."

In the governor's call for the special session, at which the 1919 act was adopted, it is stated, inter alia, that one purpose of the special session was, "(2) To provide an act in relation to the theft of automobiles and of automobile parts, attachments, accessories or appurtenances, etc." In the governor's message to the joint session he said: "The imperative need of new and additional legislation on the subject of automobile stealing is keenly realized by those who have made a study of the subject. Carefully compiled statistics disclose some astounding facts. * * * There being no adequate locking device in existence, it is plain to be seen that all of this vast investment in a needed utility is absolutely at the mercy of those who indulge in thievery of cars, and it is imperative that this Legislature provide laws that will protect the owners and provide punishment for those apprehended in stealing. Further, it is stated as a fact that delinquency among girls has increased at an alarming rate during the past year because of the use of stolen cars by 'joy riders' who have unlawfully appropriated the same for their temporary use. I recommend that a rigid anti-auto-theft law, with suitable penalties, be enacted as one of the most important measures which will be submitted for your consideration."

An analysis of the question here presented, the controlling factors to be considered, and the method

of determining the intent of the legislature, together with the proper judicial policy relative thereto, is found in 50 American Jurisprudence, pages 542-546, sections 537 and 538, from which we quote:

"§537. Determination of Legislative Intent—The legislative intent as to repeal by implication is determined in accordance with accepted rules of construction of statutes, applied to the section claimed to be repealed and the alleged repealing act. Among the matters which have been regarded as properly considered, are the nature of the several acts involved, the history of such acts, the state of the law when they were passed, the history of the times or the facts and circumstances surrounding their enactment, as well as the language and respective titles thereof, the consequences of one construction or the other, and the objects and purposes sought to be attained. The numerous rules for statutory construction on the subject of repeal of an earlier by a later statute are subservient to the supreme rule that the purpose of the legislature should be vitalized by judicial construction, where such purpose can be discovered from the whole enactment, or in connection with other statutes.

"§538. Judicial Policy.—Repeals by implication are not favored, and there are many instances in which particular statutes are held not to be repealed by implication. As a general rule, the legislature, when it intends to repeal a statute, may be expected to do so in express terms or by the use of words which are equivalent to an express repeal, and an intent to repeal by implication, to be effective, must appear clearly, manifestly, and with cogent force. The implication of a repeal, in order to be operative, must be necessary, or necessarily follow from the language used, because the last or dominant statute admits of no other reasonable construction. The courts will not hold to a repeal if they can find reasonable ground to hold the contrary; if two constructions are possible, that one will be adopted

which operates to support the earlier act, rather than to repeal it by implication."

The above rules have been approved by us in principle, and various phases thereof applied. *Kollenberger v. People,* 9 Colo. 233, 11 Pac. 101; *People v. Gibson,* 53 Colo. 231, 125 Pac. 531; *People ex rel. v. Commissioners,* 86 Colo. 249, 281 Pac. 117; *James v. Phoenix Assurance Co.,* 75 Colo. 209, 225 Pac. 213; *Union Insurance Society v. Robertson,* 58 Colo. 590, 298 Pac. 1064; *Frink v. People,* 103 Colo. 172, 83 P. (2d) 774; *Crosswhite v. People,* 110 Colo. 584, 137 P. (2d) 399; *Ferch v. People,* 101 Colo. 471, 74 P. (2d) 712.

We conclude that the 1915 act, under which defendant was charged and convicted, remains in full force and effect; that the offense included in the 1919 act, being of lesser grade than that set forth in the 1915 act, it was within the province of the jury under proper instructions to determine which offense, if any, defendant committed; that since no question is here presented that the trial court erred in the refusing to give or in giving instructions, the judgment of the trial court should be, and it accordingly is, affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE MOORE not participating.