PROPERTY TAX ADMINISTRATOR,
Petitioner,

v.

PRODUCTION GEOPHYSICAL SER-
VICES, INC., and Board of Assessment
Appeals, Respondents.

PROPERTY TAX ADMINISTRATOR,
Petitioner,

v.

KANTARA, INC., and Board
of Assessment Appeals,
Respondents.

PROPERTY TAX ADMINISTRATOR,
Petitioner,

v.

COMET GAS COMPANY, INC., and
Board of Assessment Appeals,
Respondents.

Nos. 92SC353, 92SC475 and 92SC679.

Supreme Court of Colorado,
En Banc.

Sept. 27, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen. (in No. 92SC353), Thomas D. Fears, Asst. Atty. Gen. (in Nos. 92SC475 and 92SC679), General Legal Services Section, Denver, for the Property Tax Admin'r.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Eugene C. Cavaliere, Senior Asst. Atty. Gen., Regulatory Law Section, Denver, for the Bd. of Assessment Appeals.

Justice MULLARKEY delivered the Opinion of the Court.

The three cases now before us present the single question of whether section 39–5–118, 16B C.R.S. (1982), bars a business taxpayer from seeking an abatement of taxes when the taxpayer has failed to file a personal property schedule with the county assessor as statutorily required under section 39–5–108, 16B C.R.S. (1982), and the county assessor makes a best information available property valuation because of the taxpayer's failure to file a personal property schedule. *Property Tax Administrator v. Board of Assessment Appeals*, 837 P.2d 244 (Colo.App.1992) (*Production Geophysical I*); *Property Tax Administrator v. Kantara, Inc.*, No. 91CA1008 (Colo.App., May 7, 1992) (not selected for publication); *Property Tax Administrator v. Comet Gas Company, Inc.*, No. 91CA1453 (Colo. App., July 23, 1992) (not selected for publication). In each of these cases, the court of appeals found the taxpayer was entitled to an abatement of its personal property tax based on an overvaluation of the relevant property by the county assessors. We find that such abatement of taxes is precluded by our statutory scheme, and we reverse the judgments of the court of appeals in all three cases.

## I.

Before discussing the facts relevant to each case, we will summarize briefly the statutory scheme for the taxation of personal property owned by a business or commercial enterprise as well as the procedures and rulings common to all three cases. The valuation of commercial personal property normally is based on information supplied by the taxpayer to the county assessor on a form referred to as a personal property schedule. § 39–5–107, 16B C.R.S. (1982 & 1993 Supp.). The county assessor mails a blank copy of the schedule to each known taxpayer for completion and return to the county assessor's office by April 15 of the tax year. § 39–5–108, 16B C.R.S. (1982). The county assessor then sets the value of the personal property and notifies the taxpayer. A taxpayer may challenge the valuation by filing a protest. § 39–5–122(2), 16B C.R.S. (1993 Supp.). After the value is finally determined, the county assessor notifies the taxpayer of the taxes assessed against the personal property, and the taxes must be paid by June 16 of the year following the tax year. § 39–10–102(1)(b)(I), 16B C.R.S. (1993 Supp.).

■ In each of the cases now before us, the assessor properly sent the schedule to the taxpayer and notified the taxpayer of the date when the schedule was due. Each of the three taxpayers failed to complete and return the personal property schedule. The county assessor proceeded to value the property based on the "best information available" to him or her. This type of valuation is described in the records and in this opinion as a "BIA valuation." § 39–5–116(1), 16B C.R.S. (1993 Supp.). As to this determination, the statute provides that:

> No determination of the actual value of any taxable personal property made by the assessor shall be rendered invalid by reason of his failure to secure or receive the personal property schedule required to be completed and returned to him prior to his determination of such value.

§ 39–5–118, 16B C.R.S. (1982). The effect of this section is to give a presumption of validity to the assessor's BIA valuation.

The taxpayers did not protest the valuation pursuant to section 39–5–122, 16B C.R.S. (1993 Supp.), but instead sought to have the amount of taxes reduced by following the abatement procedure set forth in section 39–10–114, 16B C.R.S. (1993 Supp.). In each case, the Board of County Commissioners (BOCC) granted the petition for abatement, but its decision was reversed by the Property Tax Administrator (PTA) who found that the taxpayer should have utilized the statutory protest procedure instead. The Board of Assessment Appeals (BAA) then reversed the PTA's ruling and ordered that a specific amount of taxes be refunded to the taxpayer. All three of its decisions were affirmed by the court of appeals.

We will now address the facts relevant to each case.

## A.

### Production Geophysical Services, Inc.

Production Geophysical Services, Inc. (PGS) neglected to return the personal property schedule for the 1989 tax year to the county assessor's office and, thus, the assessor made a BIA valuation. Two notices of valuation were sent to and received by PGS, and at least the latter notice contained information as to PGS' right to protest the valuation and the deadline by which any protest must be filed. PGS did not protest the valuation on the purported grounds, later asserted, that its books and records were in disarray.

In 1990, PGS petitioned for and received an abatement from the BOCC in the amount of $6,490.88 for its 1989 taxes. Upon appeal by the PTA, the court of appeals concluded that "the Board properly determined that a tax abatement was available under the substantive provisions of § 39–10–114, despite taxpayer's inadequate compliance with the procedural requirements of § 39–5–118." *Production Geophysical I*, 837 P.2d at 247.

## B.

### Kantara, Inc.

For seven years, Kantara, Inc. (Kantara) did not file an annual personal property schedule for its business property. Therefore, the assessor made a BIA valuation each year, beginning with a $100,000 valuation of the restaurant-use property, increased by 14.5 percent annually until 1988, when it was increased by 15 percent annually. Kantara paid the assessed taxes each year, until 1990 when it filed an abatement petition concerning its 1989 taxes. The petition was filed despite the fact that Kantara, which had received two notices regarding the 1989 valuation and the procedures by which it could protest the valuation, had not complied with the statutory protest procedures. Kantara received a $2,892.41 refund.

## C.

### Comet Gas Company, Inc.

Comet Gas Company, Inc. (Comet) failed to file an annual personal property schedule for seventeen years, during which time the assessor made an annual BIA valuation of Comet's business property. This determination was made using the last personal property schedule filed by Comet, which was from 1974, and increasing it by 20 percent annually based upon a growth factor study. Comet paid the assessed taxes without contest until 1990, when it filed an abatement petition with the BOCC concerning the tax years 1986 through 1990. Comet received a refund in the amount of $5,625.00.

## II.

The analysis in these three cases turns on a matter of statutory interpretation. We must decide which of two apparently conflicting statutory provisions applies when a taxpayer seeks to challenge a BIA valuation of the taxpayer's personal property. The issue is whether the taxpayer's exclusive remedy is the protest procedure in section 39–5–122(2) or whether the abatement procedure in section 39–10–114 is an alternative method of appeal that may be used by a taxpayer even though the taxpayer has failed to follow the protest procedure.[1]

---

**1.** Section 39–5–122(2) reads in relevant part as follows:

> If any person is of the opinion that his property has been valued too high, or has been twice valued, or is exempt by law from taxation or that property has been erroneously assessed to him, he may appear before the assessor and object, he may complete the form mailed with his notice of valuation pursuant to section 39–5–121(1) or (1.5), or he may file a

written letter of objection and protest by mail with the assessor's office before the last day specified in the notice, stating in general terms the reason for the objection and protest. . . . If the assessor finds any valuation to be erroneous or otherwise improper, he shall correct such error, but, if he declines to change any valuation which he has determined, he shall state his reasons in writing on the form described in section 39–8–106, shall

■ Our primary task in construing statutory provisions is to ascertain and give effect to legislative intent. *People v. Schuett*, 833 P.2d 44, 47 (Colo.1992). In order to ascertain legislative intent, we give the language of the statute its commonly accepted and understood meaning. *Id.* If the meaning is clear from a plain reading of the statute, we will not resort to the legislative history. *Thiret v. Kautzky*, 792 P.2d 801, 806 (Colo.1990). If, however, the language is ambiguous or unclear, we may examine the legislative history to aid us in interpreting the statute.

■ In light of these interpretive principles, we now turn to the issue of which statutory provision controls this situation. The taxpayers here assert that the abatement procedure in section 39–10–114(1)(a)(I)(A), 16B C.R.S. (1993 Supp.), applies in all circumstances involving an overvaluation, including situations in which a BIA valuation has been conducted and gone unchallenged under section 39–5–122(2). They base their argument upon a 1991 legislative amendment to section 39–10–114(1)(a)(I)(A), which provides that abatements may be made for overvaluations, and argue that each of their cases is such an overvaluation.

The court of appeals addressed the abatement procedure in *5050 S. Broadway Corp. v. Arapahoe County Bd. of Comm'rs*, 815 P.2d 966 (Colo.App.1991).[2] In that case, the county assessor mailed notices of increased valuation of the taxpayers' real property to the taxpayers. The taxpayers failed to protest the increase within the thirty-day time limit, but instead attempted to utilize the abatement procedure during the following tax year. They argued that the use of the term "errors in valuation" in the 1988 amended version of section 39–10–114 indicated the General Assembly's desire to allow taxpayers to invoke this section in almost all overvaluation cases. The BOCC refused to allow the taxpayers to use the abatement procedure, and this decision was affirmed by the BAA. In affirming the BAA ruling, the court of appeals accepted the BAA's argument that the 1988 amendment simply changed the statute of limitations. It then commented:

> In our view, a more definitive statutory clarification was necessary for the General Assembly to effectuate a change in the property tax scheme that would allow an abatement action for essentially all errors in valuation.

*Id.* at 969–70.

After *5050 S. Broadway* was decided, section 39–10–114(1)(a)(I)(A) was amended in 1991 to read in part as follows:

> Except as otherwise provided in sub-subparagraphs (D) and (E) of this subparagraph (1), if taxes have been levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, clerical error, or *overvaluation*, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes in the manner provided by law. If such taxes have been collected by the treasurer, the board of county commissioners shall authorize a refund of the same in the manner provided by law. (emphasis added).

The previous version of the statute made no reference to abatement or refund of taxes for "overvaluation." According to its terms, the amended statute was intended to apply retroactively to taxes levied on and after January 1, 1988. The statute also prevented taxpayers from seeking an abatement or refund for taxes levied on and after January 1, 1990, if protest had already been made and addressed under the provisions of section 39–5–122.

The taxpayers assert that, by including "overvaluation" in the statute, the General

---

insert the information otherwise required by the form, and shall, on or before the last regular working day of the assessor in June in the case of real property and July 10 in the case of personal property, mail two copies of such completed form to the person presenting the objection and protest so denied.

The relevant part of section 39–10–114 is cited *infra* on pages 517–518.

Assembly intended to extend the abatement and refund procedure to situations such as the one at hand—where the taxpayer has failed to comply with its statutory duties to file a personal property schedule and then to utilize the standard procedure to protest the BIA valuation. The court of appeals agreed with the taxpayers in all three cases here, stating in *Production Geophysical I*, that "when the General Assembly amended § 39–10–114(1)(a)(I)(A) in 1991, it also declared its intent to clarify that the [court of appeals'] interpretation of the statute in the *5050 S. Broadway* case was incorrect." *Production Geophysical I*, 837 P.2d at 248.

In reaching its conclusion, the court of appeals relied on the legislative declaration of purpose enacted with the 1991 amendment in Senate Bill 91–231:

> ... Senate Bill No. 184 [*i.e.,* the 1988 amendment] was enacted by the fifty-sixth general assembly in its second regular session with the intent of extending to any taxpayer the right to petition for an abatement or refund of property taxes levied erroneously or illegally due to an overvaluation of such taxpayer's property. In an opinion filed on February 7, 1991, the Colorado court of appeals stated that a more definitive statutory clarification was necessary for the general assembly to effectuate a change in the property tax scheme that would allow a taxpayer to petition for an abatement or refund for essentially all errors in valuation. The general assembly further declares that Senate Bill 91–231 was enacted by the fifty-eighth general assembly in its first regular session with the intent of clarifying that said statutory interpretation by the Colorado court of appeals was incorrect and that said right has existed since the enactment of Senate Bill No. 184 and shall continue to exist.

Act of June 5, 1991, ch. 309 § 1, 1991 Colo.Laws 1962.

The statement of legislative intent makes it clear that the legislature rejected the statutory interpretation adopted by the court of appeals in *5050 S. Broadway* with respect to real property taxes. Thus, the 1991 amendment permits a taxpayer to challenge an alleged overvaluation of real property either by filing a protest under section 39–5–122(2) or by following the abatement procedure of section 39–10–114.

Standing by itself, however, the 1991 amendment adding the word "overvaluation" is ambiguous or unclear as applied to the cases now before us because the legislature did not amend the statutory sections relevant to personal property taxes. Neither the presumption of the validity of the BIA valuation as provided by section 39–5–118 nor the protest procedure which may be used to challenge a BIA valuation situation was changed. If section 39–10–114 applies to personal property as well as to real property, the BIA process effectively would be repealed. The taxpayer's failure to return the personal property schedule would have no effect because the taxpayer always could challenge whatever value was placed on the personal property as an overvaluation under the abatement procedure.

It is, therefore, necessary for us to determine if the legislature meant to implicitly repeal section 39–5–118 when it amended section 39–10–114 in 1991. Therefore, we turn to the legislative history of these statutory provisions, as well as general rules of interpretation.

Implicit repeals are not to be encouraged, and we will not find an implicit repeal if there are reasonable grounds by which to uphold the validity of the pre-existing statute. In prior cases, we have stated:

> As a general rule, the legislature when it intends to repeal a statute may be expected to do so in express terms or by the use of words which are equivalent to an express repeal, and an intent to repeal by implication to be effective must appear clearly, manifestly, and with cogent force.... The courts will not hold to a repeal if they can find reasonable ground to hold to the contrary.

*People v. Burke*, 185 Colo. 19, 22, 521 P.2d 783, 785 (1974) (*quoting Casados v. People*, 119 Colo. 444, 204 P.2d 557 (1949)).

We do not find any such clear and manifest intent to repeal section 39–5–118 in the

legislative amendments to section 39–10–114, despite the taxpayers' contentions to the contrary. The mere fact that the abatement provision was amended later in time does not mean that the 1991 amendment implicitly overrides the personal property tax scheme including the BIA provision. Our review of the recorded legislative history of Senate Bill 91–231 has disclosed no mention of personal property taxes, and the taxpayers have failed to cite any evidence that the legislature intended the abatement procedure to apply to personal property taxes.

What is clear from the legislative statement of purpose as well as the debate on the bill is that the General Assembly addressed the 1991 amendment to the specific situation in *5050 S. Broadway*—an assessor's increased valuation of real property—and did not address personal property. The legislative omission of personal property is consistent with the sharp distinction historically made between the statutory treatment of real property and that of personal property.

As to the treatment of real property, the relevant statute establishes that the owner of real property has *no duty to provide* information to the assessor. § 39–5–102(1), 16B C.R.S. (1982). The assessor ascertains the ownership of real property from county records, and notifies the taxpayer of any increase in valuation from the previous year by May 1 of the following tax year. § 39–5–121(1), 16B C.R.S. (1993 Supp.). The legislature has determined that, in this situation, the taxpayer may challenge an incorrect valuation through either the protest or the abatement procedure.

The legislative treatment of personal property stands in contrast to the statutory scheme concerning real property because the personal property owner must initiate the valuation and is required to provide certain information to the assessor. We specifically note that the requirement that the taxpayer must furnish personal property information is extremely well-established, dating back to 1887. *See Breeze v.*

*Haley,* 10 Colo. 5, 12, 13 P. 913, 916 (1887); *see also* 1891 Colo.Sess.Laws § 3795.

When the taxpayer fails to return the information required by the personal property schedule, the assessor still must determine the value of the taxpayer's property, as we have previously stated, using the best information available to him or her. If the taxpayer believes that the valuation has been made in error, it must then file a protest *in accordance with the statutory procedures set forth in section 39–5–122(2).* If the taxpayer neglects to avail itself of the procedure, the assessor's BIA valuation is presumed to be accurate and becomes the final valuation. § 39–5–118, 16B C.R.S. (1982).

The taxpayers in the three cases before us are petitioning for abatement on valid BIA assessments, which do not fall within the ambit of section 39–10–114. Although the taxpayers in these cases are challenging the amount of taxes assessed as being too high, *i.e.* based on an "overvaluation" in the vernacular sense, it is not an overvaluation as that term is used in the statute because, due to the taxpayers' wrongful inaction, the assessor's BIA valuations are presumed to be valid. Thus, for purposes of the statute, the assessor's valuation cannot be considered an overvaluation, and section 39–10–114 may not be asserted by the taxpayer to circumvent the application of section 39–5–118. Only the protest procedure is available to the taxpayer in this situation.

We believe that this approach of distinguishing between real and personal property also comports with the legislative intent behind the tax code. If we were to read the 1991 amendment as permitting both protest and abatement procedures as alternative remedies in a personal property situation, a taxpayer that neglected its statutory duty to file a schedule would suffer no adverse effects from its failure to perform. There would be no incentive to comply—or rather, no deterrence from refusing to comply—with the statutory mandate to file a personal property schedule. In practical effect then, the assessor could be required to conduct BIA assessments, which clearly require more work than determining prop-

erty values from taxpayer-submitted schedules, in an ever-growing number of cases, as taxpayers come to realize that no adverse consequences result from ignoring a statutory duty. This would impose a significant burden on county assessors, cause a waste of public resources and render the entire statutory scheme regarding personal property ineffective. In our view, the legislature could not have intended such a result.

Our prior caselaw has emphasized strict enforcement of statutory duties imposed on taxpayers. For example, in *Richards v. Kerr*, 53 Colo. 376, 127 P. 232 (1912), the assessor assessed land to a person he believed to be the owner, due to the real owner's failure to report his property to the assessor. After sending a notice of valuation, the assessor sold the land, and the real owner objected. This court stated that:

> [I]t is not for the owner of land to neglect to perform a statutory duty in returning his property for assessment, and then expect to avail himself of his own wrong and claim that the land was sold in the wrong name, or was not sold in the manner provided for the sale of property of unknown owners, when the mistake of ownership would have been avoided by the owner performing his duty.

*Id.* at 380–381, 127 P. at 234.

In *Boyer Bros. v. Bd. of County Comm'rs, Routt County*, 87 Colo. 275, 288 P. 408 (1930), a taxpayer entered into an agreement with the assessor as to the tax rate on certain sheep, but later claimed such tax was unconstitutional. This court stated that:

> Having been, in part at least, responsible for the assessment in the manner described and having failed to file a schedule required by law, the plaintiff is in no position to urge, as a ground for recovering the taxes paid by it, the method of assessment followed in this case.

*Id.* at 285, 288 P. at 413. Thus, it can be seen in these cases that the mandate of taxpayer compliance has been long-established.

Finally, we reject the contention of taxpayers Comet and Kantara that a strict reading of section 39–5–118 would impinge upon their due process rights under the Fourteenth Amendment. The taxpayers cite *Central of Georgia Railway Co. v. Wright*, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134 (1907), in support of their position. In that case, the United States Supreme Court determined that a Georgia statute, providing that the BIA valuation made by the assessor was absolutely conclusive, violated the Fourteenth Amendment. The case is inapposite to the present situation, however, because the Supreme Court's ruling was based upon the fact that the taxpayer had no means by which to challenge the BIA valuation. Our statutory scheme, in comparison, does provide a protest procedure, as to which all the taxpayers involved were informed. It was each taxpayer's decision to forego the protest procedure, and each taxpayer's own actions—not those of any governmental entity—have allegedly deprived the taxpayer of its property.

Accordingly, we reverse the judgments of the court of appeals in all three cases. We remand the cases to the court of appeals with directions to return the cases to the BAA for reinstatement of the personal property taxes as assessed by the county assessors.

ERICKSON and SCOTT, JJ., do not participate.