SPECTRA PUBLISHING CO., INC.; and Board of Assessment Appeals, Plaintiffs–Appellees,

v.

PROPERTY TAX ADMINISTRATOR, Defendant–Appellant.

No. 92SA483.

Supreme Court of Colorado, En Banc.

Sept. 27, 1993.

Gloria A. Aluise, Dillon, for plaintiff-appellee.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Eugene C. Cavaliere, Sr. Asst. Atty. Gen., Regulatory Law Section, Denver, for Board of Assessment Appeals.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Mark W. Gerganoff, Asst. Atty. Gen., General Legal Services Section, Denver, for Property Tax Adm'r.

Justice MULLARKEY delivered the Opinion of the Court.

We transferred this case from the court of appeals pursuant to section 13–4–110, 6A C.R.S. (1987), in order to address the identical question that was before us in three other cases: whether section 39–5–118, 16B C.R.S. (1982), bars a taxpayer from seeking an abatement of taxes in a situation where the taxpayer has failed to file a personal property schedule with the county assessor as statutorily required under section 39–5–108, 16B C.R.S. (1982), and the county assessor then makes a best information available (BIA) valuation. We consolidated the other three cases for opinion and held that the protest procedure set forth in section 39–5–122, 16B C.R.S. (1993 Supp.), is the exclusive method for challenging a personal property BIA evaluation. *Property Tax Administrator v. Production Geophysical Services, Inc.*, 860 P.2d 514 (Colo.1993) (*Production Geophysical II*). We find that we cannot address this question in this case because of the state of the record, and we remand this case to the Board of Assessment Appeals (BAA) to make further findings of fact.

Spectra Publishing Company, Inc. (Spectra), is a publishing company doing business in Summit County. As a result of a research project undertaken by the Summit County Assessor's office, Spectra was identified as one of over 1500 businesses in the county which were not paying personal property taxes. Although Spectra had been in business for over twenty years and began operating in Summit County in 1984, Spectra was not placed on the county personal property tax rolls until 1990.

In January 1990, the assessor allegedly sent a personal property schedule, which is used to value commercial personal property for tax purposes, to Spectra for it to complete and return by April 15. Spectra contends that it did not receive the schedule. When the schedule was not returned to the assessor, as statutorily required under section 39–5–108, 16B C.R.S. (1982), the assessor made a BIA valuation of Spectra's commercial personal property, as she was au-

thorized to do under section 39–5–116(1), 16B C.R.S. (1993 Supp.). According to the assessor, the result of the valuation was sent to Spectra in July 1990. Spectra's president, Robert A. Wyler, testified that the company did not receive the valuation, but instead received another company's valuation. Spectra took no action in response to this notice. A second valuation notice, assessing the property at $63,340, was sent to Spectra on October 12, 1990, and Spectra concedes that this notice was received. The notice informed Spectra that if it considered the valuation to be in error, Spectra must contact the assessor's office within thirty days. Whether Spectra contacted the assessor is in dispute.

Wyler testified that a Spectra employee made at least one telephone call to the assessor's office during November 1990. The assessor's office, however, has no record of that telephone call and, from Wyler's testimony, it is unclear what was discussed during the alleged call. According to the assessor's office, if it were a general call, the person answering the phone would answer the questions. However, if the call were specific to a certain account, the call would be routed to the personal property assessor, Tracy Dankof. Dankof testified that she received no such telephone call from Spectra during November 1990.

The first telephone call of record between the parties was made on January 17, 1991, after the tax year closed and well beyond the thirty-day time period set by the assessor's October 12, 1990 letter. In that call, Spectra's bookkeeper, Nita Jorgenson, spoke with Dankof. Spectra's specific situation was discussed, and Dankof requested Spectra to send in the 1990 information to see what, if anything, could be done about the valuation. According to Dankof, the assessor's office allows a personal property schedule to be filed any time within the calendar year but a submission generally will not be considered after the year has closed.

Wyler testified that a letter containing the requested information was sent to the assessor's office on January 18, 1991, but Dankof testified that no such letter was received by the assessor's office. Another copy of the letter was sent on August 20, 1991, and received by the assessor, but no adjustment was made to the 1990 taxes.

On September 13, 1991, Spectra petitioned the Board of County Commissioners (BOCC) for an abatement of its 1990 taxes under section 39–10–114, 16B C.R.S. (1993 Supp.). The petition was granted by the BOCC but was later denied by the Property Tax Administrator (PTA). The BAA reversed the PTA's ruling, concluding that the assessor "did not make a sufficient effort to properly value the property according to C.R.S. 39–5–116(2)." The BAA then ordered an abatement/refund in the amount of $1,014.96.

■ Under *Production Geophysical II,* the protest procedure rather than the abatement procedure is the proper means to challenge a personal property BIA valuation. This case differs from the three cases resolved in *Production Geophysical II* because Spectra contends that it was not properly notified of either its duty to complete and return the personal property schedule or its ability to challenge the BIA valuation through the protest procedure.

■ There are unresolved factual questions in this case concerning the notices given by the assessor to Spectra and Spectra's notification to the assessor of its dissatisfaction with the valuation which prevent us from deciding the case. Specifically, the BAA did not determine whether Spectra received the two written notices that the assessor claimed to have sent Spectra in January 1990 and July 1990. Although Wyler denied that Spectra received the two notices, other evidence indicated that the notices and the personal property schedule were found in the desk of a departed Spectra employee long after the deadlines had passed. Further, the BAA simply noted that Spectra claimed it contacted the assessor's office in November 1990, but the BAA did not decide whether that telephone call had been made as alleged by Spectra. Nor did the BAA determine the content of the alleged November 1990 telephone call, *i.e.,* the BAA failed to decide whether the telephone call (if made) specifically challenged Spectra's

personal property BIA valuation. Without these findings, we cannot determine whether Spectra had proper notice and failed to follow the protest procedure as did the three taxpayers involved in *Production Geophysical II*. Accordingly, this case is remanded to the BAA to make the factual findings described above and for resolution of this case in light of our decision in *Production Geophysical II*.

The BAA order is reversed and this case is remanded for proceedings consistent with this opinion.

ERICKSON and SCOTT, JJ., did not participate.